Grace **ANDERSON**, et al., **Plaintiffs**,

v.

James J. **LOWREY**, et al., **Defendants**.

No. 86 Civ. 8121 (LBS).

United States District Court, S.D. New York.

Aug. 5, 1987.

Pryor, Cashman, Sherman & Flynn, New York City, for plaintiffs; Gideon Cashman, Sanford M. Goldman, Andrew H. Bart, of counsel.

Cleary, Gottlieb, Steen & Hamilton, New York City, for defendant James J. Lowrey; Jonathan I. Blackman, Mitchell A. Lowenthal, of counsel.

Cahill Gordon & Reindel, New York City, for defendants John D. Kuhns and Robert W. MacDonald; George Wailand, William M. Murphy, of counsel.

## OPINION

SAND, District Judge.

This action arises from the sale of interests in J.J. Lowrey & Co., a New York

limited partnership (the "Limited Partnership"). The plaintiffs in this action constitute over 40 percent (24 out of 55) of the limited partners, who each invested at least $150,000 in the partnership during 1981. Defendant James J. Lowrey is the managing, general partner of the Limited Partnership. Defendants John D. Kuhns and Robert W. MacDonald have been general partners since 1983. The Limited Partnership business was primarily to act as a "dealer, broker and market maker" in United States Government and municipal securities to be contributed by its investors. Amended Private Placement Memorandum (the "Memorandum"), at 1–4.

The Second Amended Complaint alleges that since its inception in 1981, the stated capital of the Limited Partnership has declined from $10,000,000 to less than $500,000, and in its first year of operation declined by more than $6,000,000. Plaintiffs bring this action for equitable and legal relief, including recision of plaintiffs' investments in the Limited Partnership, compensatory and punitive damages, and imposition of a constructive trust in favor of the Limited Partnership upon the assets of the defendants. Plaintiffs claim that Lowrey induced them to make investments in the Limited Partnership through fraudulent misrepresentations contained in the Memorandum; once plaintiffs invested, defendants allegedly acted together to cause the partnership to become worthless through, *inter alia*, systematic disregard of the partnership's business and a plundering of its assets.

Plaintiffs further allege that as late as 1986, Lowrey perpetrated fraud upon them and deprived the Limited Partnership of an asset worth tens of millions of dollars. This occurred when Lowrey allegedly directed an employee of the partnership to substitute Lowrey personally in lieu of the partnership as the purchaser of a 12 percent interest in the Power Accessories Division of TRW, Inc., a large defense contractor. Plaintiffs allege that Lowrey also directed the employee to alter a press release to reflect this change.

Plaintiffs' second amended complaint states seven claims. The first two allege violations of sections 10(b) and 17(a) of the federal securities laws. 15 U.S.C. §§ 78j(b), 77q (1982). The seventh claim alleges a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* (1982 & Supp.1985). The third claim, the only one naming Kuhns and Macdonald as defendants, is asserted derivatively on behalf of J.J. Lowrey & Co. and alleges state law breaches of fiduciary duty. The remaining claims are state law claims alleging fraud, breach of contract, and violations of the state securities laws.

Defendant Lowrey has moved to dismiss the federal claims pursuant to Rules 12(b)(1), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure ("F.R.Civ.P.") and the remaining claims for lack of diversity jurisdiction. Defendants Kuhns and MacDonald have moved to dismiss the claim against them under Rule 12(b)(1) on the basis of lack of subject matter jurisdiction. For the reasons stated below, Lowrey's motions to dismiss the claims under RICO and section 17 of the Securities Act are granted, and his motion to dismiss the section 10(b) claim is denied. The motion of defendants Kuhns and MacDonald to dismiss is granted. Last, Lowrey's motion to dismiss the state claims for lack of diversity jurisdiction is denied, although we dismiss plaintiff's claim under the Martin Act § 352–c, N.Y.Gen.Bus.Law Art. 23–A (McKinney 1984 & Supp.1986), without prejudice, on the ground that no private cause of action exists.

## I. *The Claim Under Section 10(b)*

Plaintiffs claim that material misrepresentations and omissions were made in the Memorandum for the purpose of inducing plaintiffs to invest in the Limited Partnership in violation of section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b). Specifically, they claim that Lowrey misrepresented that he "intended to devote his full-time efforts to the business of the limited partnership." Second Amended Complaint, at ¶ 42. Second, they contend that Lowrey intentionally and

falsely represented that William E. Simon, former Secretary of the Treasury, "will act as a consultant to the Partnership...." and "maintain office space at the offices of the Partnership...." Memorandum, at 42–43. Third, they allege that Lowrey misrepresented that he had "obtained commitments from a number of highly experienced individuals to join the Limited Partnership staff upon the close of the Offering." Memorandum, at 44. Last, plaintiffs contend that Lowrey concealed the fact that he "either had already formed" or "or intended to form" Catalyst Energy Development Corporation ("Catalyst"), to which "he would be devoting an increasing amount of his time and effort...." Second Amended Complaint, at ¶ 43.

■ Lowrey moves to dismiss on the grounds that plaintiffs' fraud claims fail to satisfy F.R.Civ.P. 9(b). Rule 9 does not require that allegations of scienter be made with great specificity. *See, e.g., Connecticut National Bank v. Fluor Corp.*, 808 F.2d 957 (2d Cir.1987). The rule, however, does require that plaintiffs plead those events and facts giving rise to a strong inference that defendants had an intent to defraud. *Id.* at 962; *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 115–18 (2d Cir.1982); *Ross v. A.H. Robins & Co.*, 607 F.2d 545, 556 (2d Cir.1979); *Devaney v. Chester*, 813 F.2d 566 (2d Cir.1987). In short, Rule 9 requires that a complaint give each defendant "notice of what he is charged with." *Goldman v. Belden*, 754 F.2d 1059, 1070 (2d Cir.1985).

■ In the instant case, plaintiffs contend that Lowrey misrepresented his intention "to devote his attention and energies to the management and operation of the [Limited] Partnership on a full-time basis." Second Amended Complaint, at ¶ 22. They claim that he "in fact had made other business commitments that would preclude a full-time role in the Limited Partnership." Second Amended Complaint, at ¶ 46(a). Plaintiffs' complaint states that Lowrey failed to disclose "that Lowrey either had already formed Catalyst or intended to form Catalyst in the near future...." Second Amended Complaint, at ¶ 43. Plaintiffs allege, *inter alia*, that Lowrey failed to inform plaintiffs "that he would be devoting an increasing amount of time and effort to [Catalyst's] operation and less to the Limited Partnership, and that he would utilize the assets and resources of the Limited Partnership, including the services of its managers, to advance Catalyst's interests, and not those of the Limited Partnership." Second Amended Complaint, at ¶ 43.

Lowrey represented to plaintiffs that in light of the high degree of risk associated with the venture, the success of the partnership "will depend to a great extent upon the skill, experience and continued availability of the Managing Partner and key employees." Memorandum, at 50. Nevertheless, section 5.2 of the Limited Partnership Agreement itself provided that "[t]he General Partners shall not be required to devote all of their time to the business and affairs of the Partnership." However, Lowrey also represented that despite this provision, "Mr. Lowrey intends to devote his attention and energies to the management and operation of the Partnership on a full-time basis." Memorandum, at 42.

Although it is a close case, these allegations, at least as they pertain to alleged misrepresentations as to the time Lowrey would devote to partnership interests, are sufficiently specific to satisfy Rule 9. Plaintiffs' allegation, taken as true, that at the time these statements were made Lowrey was in the process of forming Catalyst—another venture—gives rise to an inference that Lowrey's promise to commit his full time to the success of the Limited Partnership was not in good faith. Such allegations, combined with plaintiffs' claims of reliance and damage, go beyond breach of contract, and state a claim for fraud. *Cf. Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir.1986) (failure to perform promise is not fraud if made with good faith expectation it would be carried out); *Zola v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, [Current] Fed.Sec.L.Rep. (CCH) ¶ 93,-159, at 95,721–22 (S.D.N.Y.1987) ("Mere non-performance of a promise does not sup-

port an inference that it was fraudulent when uttered.").

Defendant's contention that plaintiffs should additionally be required to specify with precision when Catalyst was formed, information clearly within the province of defendant, is not persuasive. Our finding that plaintiff states a claim under section 10(b) with respect to the above allegations makes it unnecessary that we examine at this time plaintiffs' other, more tenuous, claims of intentional misrepresentations.

However, in reviewing the securities claim set forth in the first count of the Second Amended Complaint, we make certain observations. It is generally alleged that Lowrey diverted "assets and resources" from the Limited Partnership. *See* Second Amended Complaint, at ¶ 18; *see also id.* at ¶ 31 (allegation that "business opportunities" were "diverted" to Catalyst). This allegation is included without greater specificity in the body of the securities claim asserted in Count One. *See* Second Amended Complaint, at ¶ 43. We find that the complaint fails to satisfy Rule 9 insofar as Count One attempts to allege that in violation of section 10(b), Lowrey made intentional false representations that belied his actual intention to use the Limited Partnership to divert future partnership-generated opportunities to Catalyst.

We also find that plaintiffs' section 10(b) claim does not allege that Lowrey intentionally misrepresented a plan to divert partnership opportunities to himself in his individual capacity. In paragraphs 33 through 38, incorporated only by reference within the section 10(b) claim, plaintiffs allege that in connection with the TRW transaction, "Lowrey perpetrated fraud on the plaintiffs and deprived the Limited Partnership" of a valuable asset—namely the TRW stock. Second Amended Complaint, at ¶ 38. Paragraphs 42, 43, and 46 of the Second Amended Complaint, in which specific intentional misrepresentations and omissions are identified as allegedly false and misleading, do not refer in a

concrete way to the TRW transaction. We do not read Count One as alleging that at the time of the offering, Lowrey intended to divert partnership opportunities, such as the TRW transaction, for his personal advantage and misrepresented this intention in the offering material.[1]

Nevertheless, for the reasons previously stated, defendant's motion to dismiss the section 10(b) claim is denied.

## II. *The Claim Under Section 17*

■ Lowrey also moves to dismiss Count II of the Second Amended Complaint on the basis that no private right of action exists under section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q. This motion is granted.

In *Kirshner v. United States*, 603 F.2d 234, 241 (2d Cir.1978), *cert. denied*, 444 U.S. 995, 100 S.Ct. 531, 62 L.Ed.2d 426 (1979), the Second Circuit held that an implied cause of action exists under section 17(a), finding section 10(b), in this respect, indistinguishable. Noting subsequent Supreme Court decisions declining to address this question, Judge Friendly observed, however, that this holding "may be open to reexamination." *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 559 n. 3 (2d Cir.1985).

*Kirshner* was decided on the premise that section 10(b) and section 17 are essentially identical. Now, however, it is established that while the two sections may offer plaintiffs the same relief, *see Yoder*, 751 F.2d at 559 n. 3, there are practical differences between the two. For instance, scienter is required under section 10(b), but not under section 17(a)(2) or 17(a)(3). *Aaron v. Securities and Exchange Commission*, 446 U.S 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980). Furthermore, since *Kirshner*, Supreme Court decisions stressing the importance of considering congressional intent as expressed in statutory language and legislative history, have restrict-

---

1. This aspect of our interpretation of Count One becomes particularly relevant in light of plaintiffs' RICO allegations discussed *infra*, at 10–13 & nn. 3–5. Thus, even though the Second Amended Complaint purports to be plaintiffs' final complaint, we grant leave to replead this aspect of plaintiffs' securities claims within 60 days of the filing of this Opinion.

ed the criteria for determining whether a private right of action exists. *See, e.g., Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). These decisions have formulated a more stringent test for discerning implied private rights of action.

Applying this test and in light of the holdings in *Aaron* and *Yoder,* several courts in this district recently have determined that no private right of action exists under section 17. *See Ackerman v. Clinical Data, Inc.,* [1985–86] Fed.Sec.L.Rep. (CCH) ¶ 92,207 (S.D.N.Y.1985); *Kaufman v. Amtax Planning Corp.,* 669 F.Supp. 573 (S.D.N.Y.1986); *see also, e.g., Eriksson v. Galvin,* 484 F.Supp. 1108, 1127 (S.D.N.Y. 1980) and cases cited therein; *Mauersberg v. E.F. Hutton & Co.,* 116 A.D.2d 417, 501 N.Y.S.2d 748 (1st Dept.1986). Upon reconsidering this question in the absence of the unique circumstances of a multidistrict litigation, *see In re Gas Reclamation, Inc. Securities Litigation,* 659 F.Supp. 493 (S.D.N.Y.1987) (Sand, J.), we are persuaded by the reasoning of the recent and ever-increasing authority to the effect that there is no such private right.

Plaintiffs' second cause of action under section 17 therefore is dismissed.[2]

### III. *The RICO Cause of Action*

Plaintiffs' Second Amended Complaint also contains a RICO claim asserted against defendant Lowrey. The RICO claim is based on what the complaint depicts as Lowrey's operation of the Limited Partnership, the alleged "enterprise," through a "pattern of racketeering activity."

We have previously discussed the securities law claim raised in connection with the offering and have held that the Second Amended Complaint states a claim under section 10(b) to the extent that the claim is based on Lowrey's purported misrepresentation as to his commitment to devote time and energy to the Limited Partnership. The alleged securities fraud constitutes the first predicate act, plaintiffs claim, and was designed "to induce [them] to invest" in the Limited Partnership. *See* Second Amended Complaint, at ¶ 79.

The second predicate act focuses on Lowrey's purported misappropriation of the Limited Partnership's opportunity to purchase stock of the TRW Power Accessories Division. The complaint alleges that Lowrey committed an indictable act of wire fraud in connection with the TRW transaction. The goal of this so-called "second scheme," plaintiffs contend, was to "fraudulently divert[ ]" a Limited Partnership opportunity for Lowrey's "personal benefit." *Id.* at ¶ 50.

Plaintiffs properly do not assert that the alleged fraud in connection with the sale of the Limited Partnership interests itself constitutes a "pattern of racketeering activity." *See* Memorandum of Law in Opposition to Defendant James J. Lowrey's Motion to Dismiss ("Plaintiffs' Memorandum"), at 6. Rather, plaintiffs argue that a "pattern" emerges from the conjunction of the alleged fraud in connection with the initial offering and the alleged fraud in the claimed misappropriation by Lowrey of the Limited Partnership's opportunity to purchase the TRW stock. According to the plaintiffs:

In paragraph 78 of the [Second Amended Complaint] two separate and distinct predicate acts are alleged: (1) securities fraud, through the misrepresentations inducing plaintiffs to turn over their money to Lowrey and (2) wire fraud, facilitating Lowrey's theft of the Limited Partnership's already existing right to acquire 12% of the Power Acces-

---

**2.** Along the same lines, the viability of plaintiffs' fifth claim brought under the Martin Act § 352–c, N.Y.Gen.Bus.Law Art. 23–A (McKinney 1984 & Supp.1986), is open to question. The First Department has held that no private cause of action exists under that statute, a decision by which we are bound. *CPC International, Inc. v.*

*McKesson Corp.,* 120 A.D.2d 221, 507 N.Y.S.2d 984 (1st Dept.1986). However, as that decision currently is on appeal, we dismiss plaintiffs' fifth cause of action without prejudice to reinstatement in the event of a reversal of *CPC* in the Court of Appeals.

sories Division of TRW, Inc., a large defense contractor, which was being sold for $177,000,000. (Complaint, ¶¶ 33–38). Plaintiffs' Memorandum, at 5–6.[3]

Assuming *arguendo* that the wire communications Lowrey made in "misappropriating" the TRW opportunity rise to the level of wire fraud, plaintiffs' RICO claim is still subject to dismissal.[4] Plaintiffs have failed to sustain their burden of pleading the "pattern" and "enterprise" elements of a RICO claim.

 Under settled Second Circuit law, a "pattern" of racketeering activity consists of at least two "related predicate acts." *Beck v. Manufacturers Hanover Trust Company, et al.,* 820 F.2d 46, 51 (2d Cir.1987); *United States v. Ianniello,* 808 F.2d 184, 189–90 (2d Cir.1986). It is alleged here that in 1981, defendant Lowrey made misrepresentations to induce plaintiffs to invest in the Limited Partnership. It is further alleged that through a "second scheme" carried out nearly five years after the first, Lowrey "fraudulently diverted" a partnership opportunity and committed a predicate act of wire fraud in connection with such diversion. In our view, the connection between these two events is too tenuous to satisfy the relatedness aspect of RICO's pattern requirement. That the plaintiffs plead the TRW misappropriation as a "second scheme" highlights the point.

 Turning to the "enterprise" element of the RICO claim, we find that plaintiffs' allegations are similarly inadequate. The Second Circuit has emphasized that a plaintiff "must prove the existence of a *continuing* enterprise under § 1962(c)." *Beck,* 820 at 51 (emphasis in original). It is through our circuit's interpretation of the "enterprise" requirement that the courts have given effect to the "continuity plus relationship" aspect of RICO discussed in *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285, n. 14, 87 L.Ed.2d 346 (1985). *See Ianniello,* 808 F.2d at 191. Though rejecting a multiple episode requirement, the *Ianniello* court emphasized the importance of RICO's continuity plus relationship requirement, holding that "when a person commits at least two acts that have the common purpose of furthering a continuing criminal enterprise with which that person is associated, the elements of relatedness and continuity which the *Sedima* footnote construes section 1962(c) to include are satisfied." *Id.* In *Ianniello,* the enterprise aspect was satisfied because the enterprise had a "common purpose . . . to skim profits and had no obvious terminating goal or date." *Id.* at 191–92. *Cf. Beck,* at. 51 (where claimed enterprise "had but one straightforward, short-lived goal," enterprise allegation held insufficient).

In this case, we do not believe plaintiffs have sustained their pleading burdens as to either the relatedness or the continuity aspects of the enterprise requirement. The connection alleged in the Second Amended Complaint between the purported fraud in the sale of the partnership units and the alleged diversion, five years later, of a

---

**3.** Paragraph 80 of the Second Amended Complaint, in which the "second scheme" is described, states in its entirety:

A second scheme employed by Lowrey as part of his pattern of racketeering activity was to participate in the conduct of the Limited Partnership so as to ensure that some or all profitable business opportunities rightfully belonging to the Limited Partnership, such as the TRW transaction, were fraudulently diverted for his personal benefit.

Although the complaint alleges that Lowrey conducted the Limited Partnership "to ensure that some or all profitable business opportunities" of the Limited Partnership would be diverted for his benefit, plaintiffs' pleading is bereft of any specific allegations of wire or mail fraud other than those associated with the TRW trans-

action and the formation of the Limited Partnership. Second Amended Complaint ¶¶ 33–38, 78. To the extent that the RICO claim is based on the existence of other predicate acts, we believe it is deficient under Rule 9(b). *See Lowenbraun v. L.F. Rothschild, Unterberg, Towbin* [1986–87] Fed.Sec.L.Rep. (CCH) ¶ 93,066, at 95,297 (S.D.N.Y.1987).

**4.** Lowrey strenuously argues that no indictable act of wire fraud occurred in connection with the TRW transaction. In light of our holding that the "pattern" and "enterprise" requirements have not been satisfied, we need not reach this contention. Nor need we decide issues raised with regard to the statute of limitations or whether the second predicate act alleged injured the plaintiffs or just the Limited Partnership.

partnership opportunity is insufficient to give rise to the conclusion that Lowrey conducted a continuing enterprise with a criminal purpose.[5] What is alleged in this case appears to be "sporadic activity," *United States v. Teitler*, 802 F.2d 606, 611 (2d Cir.1986), which, while possibly amounting to multiple violations of law, do not make out a RICO violation. Accordingly, the RICO claim is dismissed. Plaintiffs may, if they choose to replead the securities claim, also replead the RICO claim. *See, supra,* at n. 1.

## IV. *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

The third cause of action, asserted derivatively by plaintiffs on behalf of the Limited Partnership, alleges that Lowrey, Kuhns, and MacDonald breached their fiduciary duty to the partnership. Defendants Kuhns and MacDonald move to dismiss the claim—the sole one asserted derivatively by the partnership, and the sole one asserted against these defendants in the Second Amended Complaint—based on their contention that this Court lacks subject matter jurisdiction. Defendants' argument rests on the uncontroverted premise that the third claim for relief presents "a nondiverse pendent party plaintiff asserting an allegedly pendent, state common law claim against two nondiverse, pendent party defendants...." Memorandum of Law of John D. Kuhns and Robert W. MacDonald in Support of Their Motion Pursuant to Rule 12(b)(1) to Dismiss the Amended Complaint. We find pendent party jurisdiction in this instance impermissible, and grant defendants' motion to dismiss.

The contours of pendent claim jurisdiction were described by the Supreme Court in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The Court explained that federal jurisdiction over a case having state as well as federal claims is constitutionally permissible. However, the nonfederal claims must derive from a "common

nucleus of operative fact" with the federal claims that provide the basis for subject matter jurisdiction. 383 U.S. at 725, 86 S.Ct. at 1138. The relationship between these claims must be such that the entire action constitutes but one "constitutional 'case,'" that the plaintiff would ordinarily be expected to try in one proceeding. *Id.* Additionally, the Court made clear that even when these criteria are met, the exercise of pendent jurisdiction is discretionary and depends upon considerations of judicial economy, convenience, and fairness to the litigants. *Id.* at 726, 86 S.Ct. at 1139.

When parties as well as claims pertaining to them are pendent, there are greater obstacles to federal jurisdiction. Although refraining from any "sweeping pronouncement[s]" on the subject, the Supreme Court discussed the guidelines for asserting pendent party jurisdiction in *Aldinger v. Howard*, 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976) (in suit under 42 U.S.C. § 1983, pendent party jurisdiction over county immune from suit under that section was impermissible where no independent basis for federal jurisdiction existed). The Court noted that cases in which a new party is sought to be joined are factually and legally different from the situation presented in *Gibbs:*

> it is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claim a state-law claim over which there is no independent basis of federal jurisdiction. But it is quite another thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to join an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction, simply because his claim against the first defendant and his claim against the second de-

5. The absence in Count One of a sufficiently framed allegation that Lowrey, in violation of section 10(b), made intentional false representations that concealed his true intention to use the

Limited Partnership to divert partnership opportunities for his own benefit, further supports this view. *See, supra,* at 6–7 & n. 1.

fendant 'derive from a common nucleus of operative fact'.

*Id.* at 14, 96 S.Ct. at 2420.

The Court cautioned that the exercise of pendent party jurisdiction must not violate the principle that federal courts are courts of limited jurisdiction, confined to adjudicating claims constituting one constitutional case. *Id.* at 15, 18, 96 S.Ct. at 2422; *see Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 371–73, 98 S.Ct. 2396, 2401–02, 57 L.Ed.2d 274 (1978). However, the Court also concluded that before a court exercises pendent party jurisdiction, it must examine "whether by virtue of the statutory grant of subject matter jurisdiction ... Congress has addressed itself to the *party* as to whom jurisdiction pendent to the principal claim is sought." *Aldinger,* 427 U.S. at 16, 96 S.Ct. at 2421. Ultimately, the federal court must determine whether Congress has "expressly or by implication" precluded the exercise of pendent party jurisdiction. *Id.* at 18, 96 S.Ct. at 2422. Conversely, the exercise of pendent party jurisdiction may be particularly appropriate in certain circumstances, for instance when jurisdiction over the federal claim is exclusive, such that *"only* in a federal court may all of the claims be tried together." *Id.* at 18, 96 S.Ct. at 2422.

█ In the instant case, we need not hesitate long on the "subtle and complex" questions associated with pendent party jurisdiction. *Id.* We find that as applied to defendants Kuhns and MacDonald, plaintiffs' breach of fiduciary duty claim does not satisfy the threshold requirement for the exercise of pendent jurisdiction. This third cause of action does not derive from the same nucleus of operative facts as the federal securities claim being asserted by plaintiffs, the only federal claim surviving defendants' motions to dismiss.

Plaintiffs do not dispute that defendants Kuhns and MacDonald are not charged with participating in the 1981 securities fraud alleged in the complaint's first cause of action. It is conceded that these defendants did not even become involved with the Limited Partnership until 1983. In fact, plaintiffs' recitation in the Second Amended Complaint of the acts constituting the purported breaches of fiduciary duty, *see* Second Amended Complaint, at ¶¶ 28, 31, 52–56, establish little factual overlap with the alleged misrepresentations and omissions forming the basis for securities law violations. *See id.* ¶¶ 39–48. Unlike the situation presented to this Court in *Bolton v. Gramlich,* 540 F.Supp. 822, 846 (S.D.N.Y.1982), the belated roles played by Kuhns and MacDonald as General Partners of the Limited Partnership and as partners or employees of Catalyst do not "provide an important link in the transactions that form the basis of [the federal claims]." *Id.* Kuhns and MacDonalds' alleged devotion of attention to Catalyst in derogation of their duties to the partnership is far removed in time and substance from Lowrey's alleged omissions at the time of plaintiffs' investment regarding his own projected involvement in Catalyst. We cannot say that these allegations constitute but one nucleus of operative fact.

The only conceivable link between the breaches with which these defendants are charged and the federal claims brought by plaintiffs is the TRW transaction, the sole connection stressed by plaintiffs in opposition to this motion. The TRW transaction was put forth by plaintiffs both as a purported predicate act relating to plaintiffs' RICO claim and as an act constituting a state law breach of duty. However, our dismissal of the RICO cause of action renders plaintiffs' arguments in this regard moot.

Federal jurisdiction over the remaining federal securities claim is exclusive, such that only in federal court could all of plaintiff's claims be heard in one forum. *See* 15 U.S.C. § 78aa (1982). Nevertheless, under the circumstances of this case, that factor is outweighed by more important considerations. These include constitutional limits on the proper scope of federal jurisdiction and the possible prejudice to Kuhns and MacDonald resulting from joinder in this federal litigation.

Our holding that the securities law claim does not involve the same set of operative facts as the breach of fiduciary duty claim

as asserted against Kuhns and MacDonald comports with decisions of other courts in this district. *See, e.g., In re Investors Funding Corp. of New York Securities Litigation,* 523 F.Supp. 550 (S.D.N.Y.1980) (finding implied congressional mandate that federal jurisdiction not be extended to securities-related claims where no federal securities claims existed between the parties); *Texwood Ltd. v. Gerber,* 621 F.Supp. 585 (S.D.N.Y.1985) (pendent breach of fiduciary duty claim dismissed because related activities postdated events underlying federal securities claims); *Angel Music, Inc. v. ABC Sports, Inc.,* 609 F.Supp. 764 (S.D.N.Y.1985) (that separate trials might require overlap of proof is insufficient to force defendant against whom breach of fiduciary duty claim is asserted to participate in lengthy federal copyright claim); *cf. Weinberger v. Kendrick,* 698 F.2d 61, 77 n. 15 (2d Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983) (allowing jurisdiction over pendent party plaintiffs solely in securities class action settlement context).[6]

For the reasons stated above, defendant Kuhn's and MacDonald's motion to dismiss the claim against them is granted.

### V. *Conclusion*

For the reasons stated in this Opinion, defendant Lowrey's motion to dismiss plaintiffs' claim under section 10(b) of the securities act is denied. His motion to dismiss claims under section 17 and RICO are granted. Defendant Kuhns and MacDonald's motion to dismiss the claims against them is granted. Furthermore, we dismiss the fifth cause of action asserted under the Martin Act without prejudice.

SO ORDERED.

---

6. *See also, e.g., Neilan v. Value Vacations, Inc.,* 603 F.Supp. 1227 (S.D.N.Y.1985); *Greene v. Emersons, Ltd.,* 86 F.R.D. 66 (S.D.N.Y.1980); *Kamens v. Chase Manhattan Mortgage and Realty Trust,* 443 F.Supp. 130 (S.D.N.Y.1977); *Magid v. Mortgage Growth Investors,* [1976–77] Fed.Sec.L. Rep. (CCH) ¶ 95,673 (S.D.N.Y.1976); *Pollock v. Turnkey Information Processing, Inc.,* [1984] Fed.Sec.L.Rep. (CCH) ¶ 91,520 (S.D.N.Y.1984).