Bernard **KAUFMAN** and Sylvia Kaufman, Husband and Wife, and Van Stevens and Geraldine Stevens, Husband and Wife, and Samuel Kisseloff and Muriel Kisseloff, Husband and Wife, Plaintiffs,

v.

**AMTAX PLANNING CORPORATION,** Walter Levine and Michael Stoler, Defendants.

No. 85 Civ. 4520 (WK).

United States District Court, S.D. New York.

June 30, 1986.

---

**574**

Sonkin & Fifer, New York City, for plaintiffs.

Parker Chapin Flattau & Klimpl, New York City, for defendant Stoler.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

All defendants move to dismiss the second amended complaint in this action alleging violations of sections 10(b) and 17(a) of the securities laws and common law negligence, fraud, and breach of fiduciary duty. For reasons which follow, we dismiss the federal claims. There being no assertion of diversity jurisdiction, it follows that the pendent state claims must also fall.

## BACKGROUND

We have once before considered motions to dismiss in this action. By memorandum endorsement dated February 7, 1986, we dismissed the amended complaint for failure to plead fraud with specificity and gave plaintiffs leave to replead, cautioning them at oral argument that if their new complaint did not address the concerns we there expressed, we would consider imposing sanctions. Plaintiffs have dropped a number of parties and claims from the complaint but, as to the remaining defendants, the complaint is virtually identical to the one previously dismissed.

Both parties have submitted materials outside the pleadings on the motions. Finding it unnecessary to utilize them, we proceed on the basis of the complaint alone.

Plaintiffs are three couples who in 1980 purchased units of a tax shelter limited partnership which engaged in the business of buying and leasing computer equipment. The shelter apparently resulted in tax benefits until late 1984 when the Internal Revenue Service disallowed the deductions plaintiffs had been taking. Plaintiffs then brought this action against the persons who sold them the shelter alleging that such sales were based on fraud.

They claim that they were misled into subscribing because defendants failed to give them information which was disclosed in a Partnership Offering Memorandum sent to them only after they had subscribed. They took no action after receiving the Memorandum in late 1980 until about four years later when the IRS disallowed their deductions and when they realized that the defendants' actions had been "deceitful." Par. 17. The seek recission of their subscription agreements and reimbursement of tax penalties they have had to pay.

Defendants are Amtax Planning Corporation, which was to supply the computer equipment to the partnership; its president, Walter Levine; and Michael Stoler, the personal accountant of plaintiffs Van and Geraldine Stevens.

The allegations with respect to plaintiffs Bernard and Sylvia Kaufman are contained in paragraph 14 of the complaint as follows:

That upon information and belief of the Kaufman plaintiffs beginning on or about the period of time between the last half of May and June 21 of 1980, Walter Levine commenced a series of telephone conversations with Kaufman. On each such occasion Levine described the benefits to be anticipated as a result of the purchase of the Unit of the partnership. In response to questions by Sylvia Kaufman posed during one of the first conversations. (sic) Walter Levine specifically assured Mrs. Kaufman that the Internal Revenue Service had preapproved the anticipated tax benefits to be had, and had done so in writing. Levine stated further that future changes in the tax law would not affect said benefits which would be "grandfathered in."

Plaintiffs Samuel and Muriel Kisseloff allege in paragraph 13 of the complaint that:

During the month of September 1980, Samuel Kisseloff had telephone contact with Jerry Kramer, described as a member of the Amtax office. Telephone contact was also had with Levine during the month of September, 1980. Kisseloff visited Levine in the Amtax office in the late afternoon, on or about September 30, 1980, at which time Levine described the tax benefits to be had by purchasing a unit of the partnership as a sure shot and Levine further described the deal as presenting only a modest risk.

Neither the Kaufmans nor the Kisseloffs allege that they had any contact with defendant Stoler.

Plaintiffs Van and Geraldine Stevens allege in paragraph 12 of the complaint that:

On July 15, 1980, defendant Michael Stoler, the plaintiff Stevens accountant and financial advisor since June 1977, was reviewing the office books and records of periodontal dentistry. Upon completing said review, defendant Stoler advised Stevens to invest in the limited Partnership AEC–0800. Stoler gave a brief oral description of the Partnership and told Stevens to trust him as he was his financial advisor and here to help him. Stoler also told Stevens to make up his mind presently, as it might otherwise be too late or the deal might be sold out. Stoler did not provide any written description of the risks associated with the partnership, and based solely on Stoler's oral description and advice which did not disclose any risks did Stevens decide to purchase a unit in the partnership.

Stoler then called Walter Levine and asked him whether it was too late for Stevens to purchase. At the end of the conversation, Stoler told Stevens that "they can handle it and get you into the deal" and told him to send a check for $4,800. *Ibid.* Stevens does not allege he had any contact with Levine.

## DISCUSSION

Defendants move on a variety of grounds. They argue that the complaint fails to plead fraud with specificity as required by F.R.C.P. 9(b); that there is no private right of action under § 17(a) of the Securities Act; and that the causes of action for negligence and breach of fiduciary duty are time-barred.

*Rule 9(b)*

■ As to defendant Michael Stoler, it is apparent from a glance at the paragraph quoted above that the Stevens plaintiffs have failed to allege that anything he said was untrue, or that he knew or should have known that such statements were false.

As to defendant Walter Levine, the claims of the Kisseloff plaintiffs quoted above likewise fail to allege that the statements he made were false or that, if they were, he knew or should have known of the falsity. The complaint does not say that he did not believe the shelter was a "sure shot" which presented only a "modest risk." As to the claims of the Kaufman plaintiffs, the complaint does not allege that the Internal Revenue Service had not in fact preapproved the tax benefits in writing, or that Levine did not truly believe that the partnership would be "grandfathered in" to any changes in the tax law.[1]

1. While it seems unlikely that the IRS would have issued such written preapproval, plaintiffs

It seems to us that the complaint fails to plead any fraud at all, much less with the particularity required by Rule 9(b).[2]

Plaintiffs have further failed throughout the three complaints they have drafted to date to identify which tax benefits they were told they would receive, and which tax benefits were in fact disallowed.[3] This makes it impossible, for the court and the defendants, to discern under even the most generous reading of the complaint whether there was anything wrong with the statements alleged to have been made.

*Section 17(a)*

■ In 1978 our Circuit recognized a private right of action under Section 17(a) of the 1933 Act. 15 U.S.C. § 77q. *Kirshner v. United States* (2d Cir.1978) 603 F.2d 234, 241, *cert. denied* (1979) 444 U.S. 995, 100 S.Ct. 531, 62 L.Ed.2d 426. This ruling assumed that the acts proscribed by that statute were identical to the fraudulent conduct proscribed by Section 10(b), under which section there exists a private right of action.

The rule in *Kirshner* has been questioned in light of the Supreme Court's ruling in *Aaron v. Securities and Exchange Commission* (1980) 446 U.S. 680, 689, 100 S.Ct. 1945, 1951, 64 L.Ed.2d 611, that § 17(a) also proscribes negligent conduct. *Zerman v. Ball* (2d Cir.1984) 735 F.2d 15, 23 (court declined to speculate that a private cause of action continues to exist under § 17(a)); *Yoder v. Orthomolecular Nutrition Institute, Inc.* (2d Cir.1985) 751 F.2d 555, 559 n. 3 (*Kirshner* "may be open

to reexamination, however, in the light of the subsequent Supreme Court decisions noted above and Professor Loss' comparison of the differences among the provisions for civil liability contained in the 1933 and 1934 Acts, and his analysis of the legislative history of section 17.").

Subsequent district courts have declined to follow Kirshner. In a scholarly opinion, Judge Haight decided in *Ackerman v. Clinical Data, Inc.* (S.D.N.Y.1985) [current] Fed.Sec.L.Re. (CCH) par. 92,207 at 91,510 [Available on WESTLAW, DCT database], that there was no private right of action under § 17(a). We adopt Judge Haight's reasoning and conclusion that § 17(a) does not give rise to a private right for action. *Accord In Re New York City Municipal Securities Litigation* (S.D.N.Y. 1980) 507 F.Supp. 169, 187; *Erickson v. Galvin* (S.D.N.Y.1980) 484 F.Supp. 1108.

In light of our dismissal of plaintiffs' federal claims, it is apparent that there is no jurisdiction over their pendant claims.

We direct that the complaint be dismissed with prejudice and without leave to replead.

SO ORDERED.

---

have failed utterly in their three drafts of the complaint to state that such approval in fact was never given. This leads us to conclude that there may have been some arguable basis for defendant's assertion.

2. We note that, on the merits, defendants would appear to have at least two defenses to the complaint. It is not disputed that each plaintiff had received the partnership offering memorandum by December of 1980 and that such memorandum disclosed all possible risks of the tax shelter. However, plaintiffs did nothing with this information for four years, acting upon the apparent hope—despite all warning to the contrary—that the IRS would not question the shelter. They brought suit only when that hope was finally dashed.

They seek two remedies: recission of their subscriptions and damages for tax penalties they incurred as a result of the IRS' 1984 action. As to recission, we believe it quite likely that a defense of laches would be viable, as plaintiffs did nothing with the abundance of warnings in their possession until four years after their receipt. As to damages, we question whether plaintiffs could establish a causal connection between defendants' alleged misrepresentations and damages which were incurred in the four years after plaintiff received the POM.

3. These benefits might have included, for example, depreciation allowances for the leased equipment, deductions for interest payments, or that monies at risk could be used as the basis for a capital gain or loss.