Charmaine S. EICKHORST, et al., Plaintiffs,

v.

AMERICAN COMPLETION AND DE-VELOPMENT CORPORATION, a Delaware corporation; American Completion Program—1983–3; a Texas Limited Partnership; The E.F. Hutton Group, Inc., a Delaware corporation; John P. Holmes; and Howard W. Phillips, Defendants.

No. 88 Civ. 3002(RJW).

United States District Court, S.D. New York.

Feb. 1, 1989.

Beigel & Sandler, New York City, for plaintiffs; Herbert Beigel, Lewis S. Sandler, Bruce Rose, of counsel.

Myerson & Kuhn, New York City, for defendant E.F. Hutton Group, Inc.; Harvey D. Myerson, Lloyd S. Clareman, Neil P. Forrest, Samuel P. Israel, of counsel.

Christy & Viener, New York City, for defendants American Completion and Development Corporation, American Completion Program–1983–3 and Howard W. Phillips; Franklin B. Velie, Janis G. White, Conrad Jordan, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

Defendant, the E.F. Hutton Group, Inc. ("Hutton"), has moved to dismiss the com-

plaint against it pursuant to Rules 9(b) and 12(b)(6), Fed.R.Civ.P. Defendants American Completion and Development Corporation, American Completion Program 1983–3 and Howard W. Phillips (the "American Completion Defendants") have also jointly moved to dismiss the complaint on these same grounds. For the reasons that follow, the motions to dismiss the complaint are granted. Plaintiffs are given leave to replead the fraud claims dismissed for failure to satisfy the requirements of Rule 9(b) within thirty (30) days from the date of this decision, in accordance with Rules 9(b) and 11, Fed.R.Civ.P.

## BACKGROUND

Plaintiffs consist of one hundred-eighty-one (181) investors who purchased interests in defendant American Completion Program 1983–3 ("ACP–1983–3"), an oil and gas limited partnership. Plaintiffs assert that ACP–1983–3 was ostensibly formed to provide funding for the completion of proven commercially productive oil and gas wells, but in reality was a scheme to defraud plaintiffs into investing where there was no reasonable possibility of economic gain. Complaint at ¶¶ 8, 16. Defendant American Completion Development Corporation ("ACDC"), was the general partner for the ACP–1983–3 limited partnership. Id. at ¶ 5.3. John P. Holmes[1] and Howard W. Phillips allegedly were directors of ACDC and the sole owners of American Completion Securities, Inc. ("ACS"), a corporation formed to distribute units of the ACP–1983–3 limited partnership. Complaint at ¶¶ 5.4, 14. ACS contacted selling agents, including Hutton, to sell the limited partnership interests to the public, and Hutton used its nationwide network of security dealers to sell these interests. Com-

plaint at ¶ 14. Plaintiffs apparently purchased their interests in ACP–1983–3 during the last quarter of 1983. Id. at ¶ 9.

Plaintiffs claim that they purchased the ACP–1983–3 interests in reasonable reliance on the prospectus, a brochure describing ACP–1983–3, and a broker's letter known as a Blue Top, all of which were false and misleading. Id. Plaintiffs maintain that the prospectus was created by ACDC, the brochure was created by ACS, Holmes and Phillips and the Blue Top, which included projections of future cash flow furnished by ACDC, was itself created by Hutton. Id. at ¶ 22. According to plaintiffs, these materials either characterized the investment as low risk or failed to adequately disclose the extent of the risk involved and the true likelihood of plaintiffs ever realizing a profit. Id. at ¶¶ 16–17, 19.

Plaintiffs presented four separate grounds for relief in their complaint against each of the defendants based on the alleged fraud in the sale of the ACP–1983–3 interests: the first under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5; the second under section 17(a) of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. 77q(a); the third under common law fraud; and the fourth under the Racketeer Influenced and Corrupt Organizations Act ("R.I.C.O."), 18 U.S.C. §§ 1962(a), (c) and (d).

## DISCUSSION

A. *Rule 9(b)—Pleading Fraud With Particularity*

Rule 9(b)[2] states that:

---

1. John P. Holmes, a named defendant, has not yet been served in this action and is therefore not involved in the present motions.

2. It is well settled that a claim of securities fraud under section 10(b) falls within the ambit of Rule 9(b). *Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir.1986); *Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 115 (2d Cir.1982); *Ross v. A.H. Robbins, Co.,* 607 F.2d 545, 557 (2d Cir.1979); *cert. denied* 446 U.S. 946, 100 S.Ct. 2175, 64

L.Ed.2d 802 (1980). Rule 9(b) also extends to plaintiffs' R.I.C.O. claims because these claims are based wholly upon alleged predicate acts of securities fraud under section 10(b), mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. 1343, *see Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 49–50 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), and to the claims alleging common law fraud. *E.g., Perma Research and Develop-*

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind may be averred generally.

In a motion to dismiss a complaint for failure to plead fraud with particularity as required by Rule 9(b), the plaintiffs' allegations must be taken as true. *E.g., Luce v. Edelstein*, 802 F.2d 49, 52 (2d Cir.1986). Rule 9(b) must be read in conjunction with Rule 8(a), Fed.R.Civ.P., which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief. *Ross v. A.H. Robbins Co.*, 607 F.2d 545, 557 n. 20 (2d Cir.1979) *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). The serious nature of a charge of fraud, however, renders mere conclusory allegations that defendants acted fraudulently insufficient to satisfy Rule 9(b). *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir.1972); *Center Savings & Loan Assoc. v. Prudential–Bache Securities, Inc.*, 679 F.Supp. 274, 276 (S.D.N.Y. 1988).

█ Rule 9(b) is designed to provide a defendant with fair notice of a plaintiff's claim in order to enable defendant to prepare a defense, protect defendant's reputation or goodwill from harm, and reduce the number of strike suits. *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987). Rule 9(b) is satisfied if the complaint sets forth:

(1) precisely what statements were made in what documents or oral representations or what omissions were made, and

(2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making the same),

(3) the content of such statements and the manner in which they misled the plaintiff, and

(4) what the defendants "obtained as a consequence of the fraud."

*ment Co. v. Singer Co.*, 410 F.2d 572, 576 (2d Cir.1969).

The Court shall address the application of Rule 9(b) to the fraud claims against Hutton

*Conan Properties, Inc. v. Mattel, Inc.*, 619 F.Supp. 1167, 1172 (S.D.N.Y.1985) (quoting *Todd v. Oppenheimer & Co., Inc., et al.*, 78 F.R.D. 415, 420–21 (S.D.N.Y.1978); *See also, Crystal v. Foy*, 562 F.Supp. 422, 425 (S.D.N.Y.1983) (Rule 9(b) requires a complaint to contain allegations of: "(1) specific facts; (2) sources that support the alleged facts; and (3) a basis from which an inference of fraud may fairly be drawn.")

█ Where there are multiple defendants, the complaint must disclose the specific nature of each defendant's participation in the alleged fraud. *DiVittorio v. Equidyne Extractive Industries, Inc., supra* 822 F.2d at 1247. Furthermore, the allegations of fraud ordinarily may not be based upon information and belief. *Luce v. Edelstein, supra*, 802 F.2d at 54; *Segal v. Gordon, supra*, 467 F.2d at 608; *Leslie v. Minson*, 679 F.Supp. 280, 282 (S.D.N.Y. 1988). This pleading restriction may be relaxed however, where the matter is peculiarly within the knowledge of defendant. *DiVittorio v. Equidyne Extractive Industries, Inc., supra*, 822 F.2d at 1247. When pleading upon information and belief is appropriate, plaintiffs are required to include a statement of the facts upon which the allegations of fraud are based. *Stern v. Leucadia National Corp.*, 844 F.2d 997, 1004 (2d Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988). Similarly, while Rule 9(b) allows "condition of mind" to be averred generally, plaintiffs must at least present those circumstances that provide a minimal factual basis for the allegations of scienter. *E.g., Connecticut National Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir.1987). In other words, plaintiffs must " 'specifically plead those events' which 'give rise to a strong inference' that defendants had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Connecticut National Bank v. Fluor Corp., supra*, 808 F.2d at 962 (citing *Ross v. A.H. Robbins, supra*, 607 F.2d at 558).

and the American Completion Defendants respectively. Plaintiffs' claims under section 17(a) shall be addressed separately.

### 1. Hutton

▮▮▮▮ The Court begins by noting that the complaint is characterized by the type of vague, conclusory allegations that Rule 9(b) was designed to discourage. Plaintiffs have clearly failed to meet the requirements of Rule 9(b) with regard to Hutton. Most notably, the complaint fails to adequately apprise Hutton of its alleged role in the fraud and fails to specifically plead facts to support an inference of fraudulent intent, a necessary element of plaintiffs' fraud claims.[3]

▮▮▮▮ Plaintiffs seek to lump Hutton together with those defendants responsible for producing the offering materials in which the alleged misrepresentations and omissions occurred.[4] In securities fraud claims posited on misrepresentations and omissions contained in offering memoranda, the memoranda themselves may satisfy the particularity requirements for pleading the time, place and content of the alleged fraudulent acts. *Luce v. Edelstein, supra,* 802 F.2d at 55. Furthermore, it is unnecessary to allege a specific connection between fraudulent representations in an offering memorandum and particular defendants where such defendants are insiders or affiliates participating in the offer of the securities in question. *Id.* at 55; *DiVittorio v. Equidyne Extractive Industries, Inc., supra,* 822 F.2d at 1247. Mere conclusory allegations of insider status, however, without accompanying facts which tie a defendant to the offering materials in a specific way, will not suffice to obviate the need to specify each defendant's connection with the alleged fraudulent acts. *See DiVittorio v. Equidyne Extractive Industries, Inc., supra,* 822 F.2d at 1247–49; *Stevens v. Equidyne Extractive Industries 1980,* 694 F.Supp. 1057, [Current Binder] Fed. Sec.L.Rep. (CCH) ¶ 93,959, at 90,453 (S.D. N.Y.1988).

▮▮▮▮ Plaintiffs assert that Hutton is an insider, and as such is presumptively connected with any misrepresentations or omissions contained in the offering materials.[5] In fact, plaintiffs rely heavily on this assertion of insider status in response to the Rule 9(b) challenge to the sufficiency of their allegations.[6] The complaint, however, provides no factual basis for this assertion. There are no allegations that Hutton had any role in preparing the prospectus or the brochure describing ACP–1983–3. Moreover, no facts are presented to support the allegation that Hutton was closely involved with the activities of ACP–1983–3 or the other defendants, or that Hutton actually stood in the position of an insider with relation to the sale of the interests in question.

▮▮▮▮ Plaintiffs, upon information and belief, allege that a "close association" existed among Holmes, Phillips and certain unidentified members of Hutton's "top management". Complaint at ¶ 21.[7] No-

---

**3.** Scienter is required to be pled and proved in order to maintain a section 10(b) claim. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1975). (negligence is insufficient for liability under section 10(b)). Scienter is also required to maintain an action for mail or wire fraud, the other predicate acts upon which plaintiffs base their RICO claims, *Beck v. Manufacturers Hanover Trust Co., supra,* 820 F.2d at 49–50, as well as common law fraud. *Jaksich v. Thomson McKinnon Securities, Inc.,* 582 F.Supp. 485, 502 (S.D.N.Y.1984).

**4.** For example, in paragraph 5 of the complaint, plaintiffs' state that: "[a]ll of the defendants ... actively and knowingly participated in the fraudulent scheme described in this complaint." This blanket assertion of involvement with fraud is repeated, with slight variations, throughout the complaint.

**5.** Paragraph 28 of the complaint states:

By virtue of their close association and/or fiduciary relationships with one another, all of the defendants knew or should have known of the omissions and misstatements described in ¶ 17 above and that such omissions and misstatements were of material facts. By virtue of these close associations and fiduciary relationships with one another and Hutton's actions as an underwriter for the ACP–1983–3 program, all of the Defendants were "insiders" for the offering.

**6.** Plaintiffs' Memorandum in Opposition, filed September 21, 1988, at 18–19.

**7.** Paragraph 21 of the complaint states:

Upon information and belief, Hutton's management pushed the ACP–1983–3 Program at the urging of Defendants Holmes and Phillips who were friends and/or close associates of members of Hutton's top management.

where in the complaint, however, is the factual basis set forth for this conclusion. Likewise, plaintiffs offer no source of facts for their assertion that these unidentified members of the "top management" at Hutton "pushed" the sale of the ACP–1983–3 interests because "Holmes and Phillips were friends and/or close associates of members of Hutton's top management." *Id.* at ¶ 21. There are simply no facts presented to warrant an inference that a close relationship or friendship actually existed, or to ascertain what individuals might have been involved in such a relationship and if they pushed the sale of the ACP–1983–3 interests. Such conclusory allegations are insufficient to establish Hutton as an insider.

■ Plaintiffs next allege that Hutton prepared a sales memorandum, called a Blue Top, to be used by its brokers in selling the ACP–1983–3 interests. The Blue Top is alleged to contain the same misrepresentations as the brochure prepared by ACDC and to contain misleading projections of future cash flow prepared by ACDC at the request of Hutton. *Id.* at ¶¶ 22–23.[8] These allegations regarding the Blue Top, however, do not satisfy plaintiffs' pleading burden.

Plaintiffs have failed to adequately plead how the Blue Top is connected to any alleged fraud. Plaintiffs do not allege that the Blue Top was ever circulated outside of Hutton's internal network of brokers. Plaintiffs ask the court to infer that Hutton's brokers used the Blue Top, as well as the other offering material, to sell the ACP–1983–3 interests, and that plaintiffs relied on this information in making their purchases. *Id.* at ¶¶ 23, 9. Nowhere, however, do plaintiffs allege what information was specifically conveyed, when this information was conveyed, how the information was conveyed, and whether or not Hutton knew this information was misleading. The mere reference to the existence of the Blue Top, which is not alleged to have been distributed to, or seen by, plaintiffs, and which is unaccompanied by any supporting factual allegations regarding how it was used in the claimed fraud, is inadequate to satisfy the requirements of Rule 9(b). *See Leslie v. Minson, supra,* 679 F.Supp. at 283–84 (general allegations that defendant used certain documents in selling investments did not satisfy Rule 9(b)).

■ Even if plaintiffs' allegations did connect Hutton to the alleged misrepresentations and omissions in the offering material, that alone would not establish scienter, a necessary element to plead and prove in order to maintain a fraud claim. In fact, the only allegations specifically concerning Hutton's intent are based strictly upon information and belief. Complaint at ¶¶ 20–21. Nowhere in the complaint are any further facts or circumstances provided which would support these naked allegations of scienter.

■ Nevertheless, plaintiffs argue that an inference of fraudulent intent can be found because Hutton allegedly performed a due diligence investigation prior to selling the ACP–1983–3 interests.[9] Plaintiffs maintain this investigation should have turned up the asserted improprieties in the offering materials and therefore scienter can be inferred. While such an allegation might suffice to support an inference of negligence, it alone is insufficient to establish the strong inference of fraudulent in-

Plaintiffs repeat these conclusory allegations of the existence of a close relationship at different points in the complaint, occasionally alternating the phrase "top management" with "upper management". *Id.* at ¶¶ 20, 28.

8. Plaintiffs allege that the Blue Top described the ACP–1983–3 interests "as a low risk investment with regular cash flow." Complaint at ¶ 23.

9. Paragraph 20 of the complaint states:
Hutton knew or should have known of all of these omissions and undisclosed risks because it performed a due diligence investigation of ACDC and ACP–1983–3 *prior* to agreeing to sell ACP–1983–3 limited partnership interests. Upon information and belief, Hutton's upper management "pushed" through Hutton's agreement to sell ACP–1983–3, and, consequently, Hutton either never completed its due diligence analysis or, alternatively the due diligence report was disregarded by Hutton's upper management over the due diligence department's strenuous objections.

tent necessary to satisfy Rule 9(b). Plaintiffs have presented no facts surrounding the alleged due diligence investigation undertaken by Hutton which even suggest that this investigation uncovered any deficiencies in the offering materials. The lack of any factual circumstances concerning this investigation does not allow for an inference that Hutton's decision to go ahead with the sale of the ACP–1983–3 interests was undertaken with scienter.[10]

■ Plaintiffs also argue that scienter on the part of Hutton can be inferred because the allegations demonstrate that Hutton, in its position as sales agent for ACP–1983–3, had a motive and opportunity to commit fraud. The Court of Appeals in *Beck v. Manufactures Hanover Trust Co., supra,* 820 F.2d at 50, noted that it was possible to plead facts "showing a motive for committing fraud and a clear opportunity for doing so" that will provide the necessary strong inference of fraudulent intent. Conclusory statements that Hutton participated in a scheme to defraud plaintiffs in order to "to divert enormous revenues" to itself, are completely unsubstantiated by other allegations of fact. Complaint at ¶ 8. Consequently, they lack enough substance to support a finding of motive. *See Stern v. Leucadia National Corp., supra,* 844 F.2d at 1004.

The *Beck* court went on to state that even "[w]here motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant [citations omitted], though the strength of the circumstantial allegations must be correspondingly greater." *Beck v. Manufactures Hanover Trust Co., supra,* 820 F.2d at 50. No other circumstances have been adequately pleaded by plaintiffs to support drawing an inference of scienter. While the Court recognizes the difficulties inherent in realistically pleading a defendant's actual state of mind, the complaint here has failed to muster the bare minimum of facts necessary to support an inference that Hutton had the requisite scienter. *See Connecticut National Bank v. Fluor Corp., supra,* 808 F.2d at 962; *Devaney v. Chester,* 813 F.2d 566, 568 (2d Cir.1987) (allegations insufficient to support inference of scienter on part of sales agent of securities); *Roebuck v. Guttman,* 678 F.Supp. 68, 69 (S.D.N.Y. 1988) (same).

■ Finally plaintiffs attempt to overcome the deficiencies in their section 10(b) claim against Hutton by making a passing reference to liability based on aiding and abetting a securities fraud violation and conspiracy to commit such a violation.[11] To maintain a claim for aider and abettor liability under section 10(b), plaintiffs must plead: (1) a primary securities violation; (2) knowledge of that violation; and (3) substantial assistance by the defendant in furtherance of the primary violation. *See Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 119 (2d Cir.1982). Even if plaintiffs have sufficiently alleged the existence of a primary violation by the American Completion Defendants, the complaint fails to adequately allege any factual circumstances from which the Court could infer that Hutton was aware of any securities violation or was aware that its activities substantially aided the success of that violation. Similarly, there can be no basis for plaintiffs' conclusory allegation of conspiracy between Hutton and the American Completion Defendants without factual allegations that indicate there existed an agreement to engage in a scheme to defraud plaintiffs, in violation of Rule 10b–5. *See Decker v. Massey–Ferguson, Ltd., supra,* 681 F.2d at 119; *Segal v. Gordon, supra,* 467 F.2d at

---

**10.** The lone allegation that Hutton, Holmes and Phillips were "experienced securities dealers, particularly in the area of energy related securities" is far too general to provide the necessary factual basis to support an inference of scienter in this case. Complaint at ¶ 13.

**11.** Plaintiffs do not specifically set out claims under theories of aiding and abetting or con-

spiracy. Instead, in Paragraph 35 of the Complaint, as a preamble to the claim for securities fraud, plaintiffs state:

the American Completion defendants and Hutton, singly and in concert, directly and indirectly conspired to, aided and abetted each other to, and did. . . .

607. No such factual support has been presented.

Accordingly, the plaintiffs' fraud claims against Hutton must be dismissed for failure to satisfy Rule 9(b). Plaintiffs are granted leave to replead against Hutton within thirty days from the date of this decision. Plaintiffs are reminded that any repleading of the fraud claims against Hutton must occur within the parameters set by Rule 9(b) as well as Rule 11, which is designed to eliminate the costly expense of litigating frivolous claims.

### 2. The American Completion Defendants

The question of whether the complaint satisfies Rule 9(b) with regard to these defendants is a close one. Plaintiffs have alleged more facts relating to the involvement of these defendants in the alleged fraud than they had in relation to Hutton. The Court, however, is mindful of the serious nature of a charge of fraud, the potential abuse that can occur if a plaintiff is allowed to wield the stigma of such an unsupported charge of fraud at a defendant and, therefore, the need for particularized facts which constitute the claim of fraud to be included in the complaint, as required by Rule 9(b). Upon close examination of the complaint, the Court concludes that plaintiffs have failed to allege sufficient facts to survive the American Completion Defendants' motion to dismiss for failure to plead fraud with particularity.

Plaintiffs allege that the offering materials for the sale of the ACP–1983–3 interests were constructed in a manner designed to minimize the risk involved with the investment by containing certain delineated misrepresentations and omissions.[12] The complaint alleges that the brochure "described the ACP–1983–3 program as a low risk investment with regular cash flow," and that the prospectus replaced "the typical, boldface, large-type boilerplate language that the securities are 'speculative' with the bold face, large type statement that the program 'will not engage in exploratory or development drilling' " in order to mislead potential customers. Complaint at ¶¶ 22, 19.

Plaintiffs maintain that they have adequately identified the American Completion Defendants' connection to the alleged fraud. The American Completion Defendants, on the other hand, argue that the allegations fail to meet Rule 9(b) requirements because they do not distinguish among the various defendants and because they fail to specify who was responsible for each specific alleged misstatement or omission. This argument is not persuasive. Plaintiffs have alleged that the American Completion Defendants were insiders, closely involved with the offer of the ACP–1983–3 interests, to whom the alleged misrepresentations and omissions in the offering materials can be attributed. Complaint at ¶ 28. As the aforementioned discussion demonstrates, a more specific delineation of which defendant was responsible for which alleged misstatement or omission in the offering materials is unnecessary when the defendants are insiders connected with the offer of securities in question. *See Luce v. Edelstein, supra,* 802 F.2d at 55. Here, plaintiffs have alleged that certain specified members of the American Completion Defendants actually created the challenged offering material and that each of the American Completion Defendants was sufficiently involved in the issuance of the ACP–1983–3 interests to be considered insiders.[13] These allegations adequately apprise the American Completion Defendants of the time, place and content of their alleged acts of fraud and therefore meet these requirements of Rule 9(b).

---

**12.** The complaint contains allegations of certain specific omissions and affirmative misrepresentations that plaintiffs allege occurred in the offering material. Complaint at ¶¶ 17–18.

**13.** For example, ACDC, the general partner of ACP–1983–3, is alleged to have created the prospectus, ACS is alleged to have created the brochure, Phillips is alleged to have been the co-owner of ACS, which was allegedly created to distribute the ACP–1983–3 interests, as well as a director and shareholder of ACDC, and ACP–1983–3 is the subject of the alleged fraud. Complaint at ¶¶ 5.3, 5.4, 14, 28.

The allegations, however, do not fully satisfy the requirements of particularity for pleading fraud. The American Completion Defendants argue that the complaint fails to plead how any representations or omissions in the offering materials were fraudulent. They charge plaintiffs with pleading fraud by "hindsight", based on a failure to predict that the investment might fail in the future. *See Crystal v. Foy, supra*, 562 F.Supp. at 429; *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir.1978). In addition, the American Completion Defendants assert that plaintiffs' allegations have not included any facts upon which an inference of fraudulent intent can reasonably be based. The Court agrees.

■ The alleged omissions and misrepresentations in the offering materials center around a failure to disclose the level of risk involved in ACP–1983–3. Nowhere, however, do plaintiffs support their allegations regarding the portrayal of risk with facts other than the after-the-fact result that their investment has been unprofitable. There is almost a complete lack of factual allegations in the complaint concerning the circumstances surrounding the ACP–1983–3 offering. The complaint itself, in explaining how the ACP–1983–3 investments failed to yield a return, relies on the occurrence of events years after the issuance of the securities. For example, plaintiffs assert that fraud occurred in the failure to disclose that "the revenues required to return a profit to [ACP–1983–3] were, for all practical purposes, impossible to achieve," Complaint at ¶ 17. The complaint then explains how the investment became unprofitable by reciting that:

> beginning in late 1985 ... energy prices dropped dramatically; crude oil prices dropped by 50% ... a gas plant in which ACP–1983–3 had purchased an interest, was closed the reserves in one oil prospect suddenly 'disappeared' and another drilling project in Pennsylvania had to close down because the State of Pennsylvania imposed stringent restrictions on the disposal of ... saltwater generated by the drilling operation.

Complaint at ¶ 25. "As a result of [these] events", plaintiffs assert the income distributions from ACP–1983–3 stopped. Complaint at ¶ 26.

No factual circumstances have been alleged to indicate the American Completion Defendants should have predicated the occurrence of these events or that they fraudulently concealed the risks involved with the investment. The oblique reference to the "experience" in "energy-related securities" of certain defendants does not provide enough factual support for an inference that they should have disclosed the information plaintiffs allege. Complaint at ¶ 13.

Furthermore, plaintiffs present no factual allegations which can support a strong inference that the American Completion Defendants had the requisite scienter to commit fraud. The dearth of factual allegations make this complaint inadequate. Nowhere have plaintiffs laid out facts from which an inference could be drawn that the American Completion Defendants acted with scienter in failing to predict the downturn in energy prices or the other events that occurred after the issuance of the ACP–1983–3 interests. *See Denny v. Barber, supra*, 576 F.2d at 470. Moreover, there are insufficient circumstances presented from which the Court can infer that the portrayal of the level of risk in the offering materials was undertaken with the requisite degree of scienter. *See Crystal v. Foy, supra*, 562 F.Supp. at 426–30. The Court notes that it may well be possible for plaintiffs to amend their complaint to allege sufficient facts to support a fraud claim against the American Completion Defendants. The complaint, as it stands now, however, does not contain the necessary factual allegations to enable it to pass the minimal threshold required in order to plead a charge of fraud. Accordingly, plaintiffs' fraud claims against the American Completion Defendants must be dismissed for failure to satisfy Rule 9(b). Plaintiffs are granted leave to replead against the American Completion Defendants within thirty days from the date of this decision.

The Court next turns to defendants' argument that the claims under section 17(a) of the 1933 Act must be dismissed pursuant to Rule 12(b)(6).

## B. *Section 17(a)—Failure to State a Claim*

The Court's role on a motion under Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted is a limited one: it must accept plaintiffs' well pleaded allegations at face value and construe the allegations in the complaint in plaintiffs' favor. *Dwyer v. Regan,* 777 F.2d 825, 829 (2d Cir.1985). The Court may dismiss the complaint only if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

Defendants jointly argue that plaintiffs' claims under section 17(a) of the 1933 Act must be dismissed because there is no private right of action under that provision. The Court is well aware of the controversy in this Circuit which has swirled around the question of whether a private right of action exists under section 17(a) following the Court of Appeals decision in *Kirshner v. United States,* 603 F.2d 234, 241 (2d Cir. 1978), *cert. denied,* 444 U.S. 995, 100 S.Ct. 531, 62 L.Ed.2d 426 (1979).[14]

In *Kirshner,* the Second Circuit held that a private cause of action exists under section 17(a), finding section 17(a) virtually indistinguishable from section 10(b). In coming to this conclusion the Second Circuit cited a remark from Judge Friendly's concurrence in *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 867 (2d Cir.1968), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), that "there was little practical point in denying the existence of an action under § 17 once it has been established that an aggrieved buyer has a private right of action under § 10(b) of the 1934 Act." *Kirshner v. United States, supra,* 603 F.2d at 241.

The Supreme Court has repeatedly declined to reach the issue of whether a private right of action exists under section 17(a). *See Herman & MacLean v. Huddleston,* 459 U.S. 375, 378 n. 2, 103 S.Ct. 683, 685 n. 2, 74 L.Ed.2d 548 (1983); *Int'l Brotherhood of Teamsters v. Daniel,* 439 U.S. 551, 557 n. 9, 99 S.Ct. 790, 795 n. 9, 58 L.Ed.2d 808 (1979); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 733 n. 6, 95 S.Ct. 1917, 1924 n. 6, 44 L.Ed.2d 539 (1975).

Moreover, the Second Circuit has specifically declined to reaffirm its determination in *Kirshner. Manufactures Hanover Trust Co. v. Drysdale Securities Corp.,* 801 F.2d 13, 25 (2d Cir.1986), *cert. denied, Arthur Andersen & Co. v. Manufactures Hanover Trust Co.,* 479 U.S. 1066, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987); *Zerman v. Ball,* 735 F.2d 15, 23 (2d Cir.1984). In fact, Judge Friendly, writing for the Second Circuit in *Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 559 n. 3 (2d Cir.1985), stated that the holding of *Kirshner* "may be open to reexamination" in light of subsequent Supreme Court decisions. This passage has helped pave the way for a reconsideration of this issue by the district courts in this Circuit.

In addition to the passage in *Yoder,* it is clear that certain significant changes have occurred in the law since *Kirshner* which call into question the validity of the conclusion that a private right of action exists under section 17(a). For example, the Supreme Court in *Aaron v. SEC,* 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed.2d 611 (1980), held that while actions under section 17(a)(1) require proof of scienter, as do actions under section 10(b), actions under sections 17(a)(2) and 17(a)(3) do not require such proof. The existence of dif-

---

**14.** In fact, this Court, almost eight years ago, stated that it felt "constrained to follow the rule set forth in *Kirshner* unless and until either the Court of Appeals for this Circuit or the Supreme Court adopts a different rule." *Savino v. E.F. Hutton & Co., Inc.,* 507 F.Supp. 1225, 1234 nt. 6. (S.D.N.Y.1981). The Court in *Savino,* as had the Second Circuit in *Kirshner,* assumed the elements of a claim under section 17(a) were the same as those under section 10(b). *Id.* at 1231 nt. 3. In light of subsequent developments in the law, the Court concludes it is time to reconsider its position on this issue.

ferences between section 17(a) and section 10(b) claims undercuts the fundamental assumption upon which the *Kirshner* holding was apparently premised: that the elements of a claim under section 17(a) are identical to those under section 10(b) and therefore a private right of action exists under section 17(a) because one exists under section 10(b). Additionally, the Supreme Court has elaborated on the importance of considering congressional intent under the four part test laid down in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), for determining whether a private right of action exists in a statute. *See Touche Ross & Co. v. Redington* 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2488–89, 61 L.Ed.2d 82 (1979); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979).

■ An examination of section 17(a) under the current Supreme Court analysis, in light of the determination that section 17(a) cannot be fully equated with section 10(b), yields the conclusion that no such private right of action exists.[15] As Judge Haight noted in *Ackerman v. Clinical Data, Inc.*, [1985–86 Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,207 at 91,571 (S.D.N.Y.1985) [1985 WL 1884] "[v]irtually all of the courts which have investigated the legislative history of § 17 have determined that there was no intention to create civil liability under § 17."[16] Indeed, the 1933 Act provided an intricately crafted vehicle for prohibiting certain conduct relating to the issuance of securities and included express provisions for civil liability as well as limitations on these provisions, none of which comports with an intent to have an implied private right of action under section 17(a). *See e.g., Ackerman v. Clinical Data, Inc., supra,* [1985–86 Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,207 at 91,571. In fact, there has recently been a steady stream of opin-

ions by district court judges in this Circuit which have found it appropriate to reexamine *Kirshner* and which have concluded that section 17(a) does not authorize a private right of action. *See Stevens v. Equidyne Extractive Industries 1980, supra,* 694 F.Supp. 1057 [Current Binder] Fed.Sec. L.Rep. (CCH) ¶ 93,959, at 90,456 (S.D.N.Y. July 28, 1988); *Boley v. Pineloch Associates, Ltd.,* 700 F.Supp. 673 (S.D.N.Y.1988); *The Limited, Inc. v. McCory Corp., supra,* 683 F.Supp. at 395–97; *Center Savings & Loan Assoc. v. Prudential–Bache Securities, Inc.,* 679 F.Supp. 274, 278–79 (S.D.N. Y.1988); *SSH Co., Ltd. v. Shearson Lehman Brothers Inc.,* 678 F.Supp. 1055, 1059 (S.D.N.Y.1987); *Anderson v. Lowrey,* 667 F.Supp. 105, 109–110 (S.D.N.Y.1987); *Beres v. Thompson McKinnon Securities, Inc.,* [1987 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,395, at 97,071–72 (S.D.N.Y.1987) [1987 WL 16977]; *Kaufman v. Amtax Planning Corp.,* 669 F.Supp. 573, 576 (S.D. N.Y.1986).

While certain courts have felt bound to follow the *Kirshner* holding, the path this Court initially chose in *Savino,* the Court is aware of no recent voice substantively arguing the correctness of the conclusion that section 17(a) carries with it an implied private right of action. *See e.g. Ohman v. Kahn,* 685 F.Supp. 1302, 1310 (S.D.N.Y. 1988) (Court felt bound to follow *Kirshner* "despite strong arguments against [its] result"). Upon reexamination of this question the Court concludes, in agreement with numerous recent decisions that have considered the merits of this issue, that no private right action exists under section 17(a). Accordingly, the section 17(a) claims must be dismissed.

## C. *Statute of Limitations Under Section 10(b)*

Hutton argues that a uniform federal statute of limitations of one year after

---

**15.** Judge Haight's thorough review of this issue led him to firmly conclude that *"Kirshner* was no longer controlling authority.... and that there is no implied private right of action under § 17." *Ackerman v. Clinical Data, Inc.,* [1985–86 Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,207 at 91,-571 (S.D.N.Y.1985).

**16.** *See also, The Limited, Inc. v. McCory Corp.,* 683 F.Supp. 387, 395–96 (S.D.N.Y.1988) (lists numerous courts which have examined the legislative history of the 1933 Act and found that section 17(a) was not intended to provide civil liability).

discovery of the facts constituting the violation, and in no event more than three years after the violation applies to actions under section 10(b).[17] Therefore, Hutton contends that plaintiffs are barred from maintaining their securities fraud claims arising out of the 1983 issuance of the ACP–1983–3 interests even in the event they are able to replead them in compliance with Rule 9(b). Hutton maintains that the Supreme Court's holding in *Agency Holding Corp. v. Malley–Duff Associates, Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 2767, 97 L.Ed. 2d 121 (1987), that a uniform federal statute of limitations applies in cases brought under the R.I.C.O. statute, mandates a departure from the policy followed in this Circuit of applying the forum state statute of limitations most analogous to the section 10(b) claim.[18] In support of this argument, Hutton relies on the recent Third Circuit *en banc* decision, *In re Data Access Systems Securities Litigation*, 843 F.2d 1537 (3rd Cir.), *cert. denied, Vitiello v. Kahlowsky & Co.*, — U.S. —, 109 S.Ct. 131, 102 L.Ed. 2d 103 (1988), in which a uniform federal statute of limitations was applied to section 10(b) and Rule 10b–5 claims.[19]

The Supreme Court in *Malley–Duff* explained that when a federal statute is silent on the issue of what statue of limitation applies to the federal cause of action, the federal courts need not always apply the state statute of limitations most analogous to each individual case. *Agency Holding*

*Corp. v. Malley–Duff Associates, Inc., supra*, 107 S.Ct. at 2762. Still, the Court acknowledged that:

> Given our longstanding practice of borrowing state law, and the congressional awareness of this practice, we can generally assume that Congress intends by its silence that we borrow state law.

*Id.* The policy that federal courts are to resort to state law for borrowing of limitations periods is to remain the norm and the "mere fact that state law fails to provide a perfect analogy to the federal cause of action is never itself sufficient to justify the use of a federal statute of limitations." *Id.*

A departure from the general rule that the limitations period is to be borrowed from a state statute of limitations occurs only

> when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking.

*Id.* at 2763. (quoting *DelCostello v. Teamsters*, 462 U.S. 151, 171–172, 103 S.Ct. 2281, 2294–2295, 76 L.Ed.2d 476 ((1983)). The Supreme Court cautioned that "[t]his is a narrow exception to the general rule." *Reed v. United Transportation Union*, — U.S. —, —, 109 S.Ct. 621, 624, 102

**17.** The American Completion Defendants joined in this argument without specifically arguing it themselves. Memorandum in Support of Motion of American Completion Defendants, filed July 29, 1988, at 4.

**18.** The Second Circuit has held that the statute of limitations to be applied in litigation under section 10(b) is that of the most closely analogous statute of limitation under the law of the forum state, including any state borrowing statute if plaintiffs are nonresidents of the forum state. *Armstrong v. McAlpin*, 699 F.2d 79, 86, 89 (2d Cir.1983); *Appel v. Kidder, Peabody & Co., Inc.*, 628 F.Supp. 153 (S.D.N.Y.1986); *Klock v. Lehman Bros. Kuhn Loeb Inc.*, 584 F.Supp. 210, 214 (S.D.N.Y.1984).

**19.** The Third Circuit concluded that the period of limitations for claims under section 10(b) should be the same as that period provided in certain provisions of the Exchange Act and the 1933 Act which expressly grant private civil

remedies: "one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such violation." *In re Data Access Systems Securities Litigation, supra*, 843 F.2d at 1545–46, 1550.

The provisions in the Exchange Act which contain this limitations period are: section 9(e), concerning manipulation of security prices, section 18(c) covering liability for misleading statements in any application, report, or filed document, and section 29(b) concerning the validity of contract provisions in violation of the Exchange Act. In addition, the limitations period in section 13 of the 1933 Act, which applies to various express actions, was amended by Congress in enacting the Exchange Act to provide for a period of one year from the time the violation was or should have been discovered, in no event to exceed three years from the time of offer or sale.

L.Ed.2d 665 (1989) (Court applied analogous state statute of limitations to claims under section 101(a)(2) of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(2), not the uniform limitations period provided for under the National Labor Relations Act, 29 U.S.C. § 160(b)).

In *Malley–Duff* the Supreme Court focused on the particular characteristics of borrowing a limitations period in R.I.C.O. actions in concluding that there was a need for a uniform statute of limitations and that the practicalities of R.I.C.O. litigation made the 4–year limitations period for the Clayton Act, 15 U.S.C. § 15b, a far closer analogy than any available state statute. *Id.* 107 S.Ct. at 2767. Actions under civil R.I.C.O. presented a variety of unique problems for applying analogous state limitation periods. The Supreme Court noted that the R.I.C.O. predicate offenses could be based on numerous state law felonies as well as violations of various federal statutes which, in turn, could be analogized to an array of state statutes with many different periods of limitations. *Id.* at 2763–64. Furthermore, the Supreme Court agreed with the lower court that concepts such as "enterprise" and "pattern of racketeering activity", central to a R.I.C.O. claim, were foreign to state common law. *Id.* at 2764. These arguments do not apply with the same force in the context of section 10(b).

The Third Circuit in *Data Access* noted that "the Supreme Court has yet to rule on the applicable limitations period for a section 10(b) and Rule 10b–5 action," *In re Data Access Systems Securities Litigation, supra,* 843 F.2d at 1539, but stated that "because we are a court in banc, we are free to re-examine the reasoning and holdings" of prior cases which applied an analogous state statute of limitations to section 10(b) claims. *Id.* at 1549. In addition, the prior case law in the Third Circuit

on the question of what limitations period to apply to section 10(b) claims "could fairly be described as uncertain." *Hill v. Equitable Trust Co.,* 851 F.2d 691, 697 (3rd Cir.1988) (applying *Data Access* limitations period retroactively), *cert. denied, Data Controls North v. Equitable Bank Nat'l Assn.,* — U.S. —, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989).[20] The court in *Data Access* concluded that a uniform federal statute of limitations would minimize uncertainty and time consuming litigation in the securities field, and therefore was appropriate under the analysis set forth in *Malley–Duff. In re Data Access Systems Securities Litigation, supra,* 843 F.2d at 1543–44. The Third Circuit found "it would seem bizarre if not anomalous to go beyond the express statutes of limitations contained in provisions of the 1934 Act" in determining the most analogous limitations period to apply. *Id.* at 1549.

In contrast to the Third Circuit, the law in the Second Circuit regarding the applicable statute of limitations for section 10(b) actions is clear. As this Court noted in *Klock,*

[i]n actions alleging fraudulent violations of the federal securities laws, the Second Circuit has consistently adopted state statutes of limitations for actions based upon common law fraud. *See e.g., Armstrong v. McAlpin, supra,* 699 F.2d at 86; *Stull v. Bayard,* [561 F.2d 429, 431 (2d Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978)]; *Klein v. Shields & Co.,* 470 F.2d 1344, 1346 (2d Cir.1972); *Klein v. Auchincloss, Parker & Redpath,* 436 F.2d 339, 341 (2d Cir.1971); *Hoff Research & Development Laboratories, Inc., v. Philippine National Bank,* 426 F.2d 1023, 1025 (2d Cir.1970). *But see Berry Petroleum Co. v. Adams & Peck,* 518 F.2d 402, 409 (2d Cir.1975) (applying Texas law)

Both *Roberts* and *Biggans* contained dissenting opinions which argued that the limitations period based on state blue sky laws should be applied. *Roberts v. Magnetic Metals Co., supra,* 611 F.2d at 463; *Biggans v. Bache Halsey Stuart Shields, Inc., supra,* 638 F.2d at 612.

---

**20.** Two prior Third Circuit cases which had addressed the limitations issue with respect to section 10(b) had each found, with a divided panel, that the state common law period of limitations should apply. *Roberts v. Magnetic Metals Co.,* 611 F.2d 450, 456 (3rd Cir.1979); *Biggans v. Bache Halsey Stuart Shields, Inc.,* 638 F.2d 605, 610 (3rd Cir.1980).

*Klock v. Lehman Bros. Kuhn Loeb Inc.,* *supra,* 584 F.Supp. at 214. *See also, IIT, an Int'l. Investment Trust v. Cornfeld,* 619 F.2d 909, 928 (2d Cir.1980) ("This circuit has uniformly found the analogy in the limitations period which the state had provided for an action based upon common law fraud."); *Phillips v. Levie,* 593 F.2d 459 (2d Cir.1979). This practice has continued to be steadfastly applied by the district courts in this circuit. *See e.g., Zola v. Gordon,* 685 F.Supp. 354, 363 (S.D.N.Y. 1988); *Goodman v. Shearson Lehman Bros., Inc.,* 698 F.Supp. 1078, 1082 (S.D.N.Y.1988); *Kronfeld v. Advest, Inc.,* 675 F.Supp. 1449 (S.D.N.Y.1987).[21]

Furthermore, many significant differences exist between a claim under R.I.C.O. and one under section 10(b). Any change in the manner in which the statute of limitations is determined must be approached with caution, given these differences.[22] For example, any uncertainty regarding what state statute of limitations period to apply to section 10(b) claims is typically limited to the choice between that period for common law fraud and that period contained in the state's blue sky laws. This choice presents a less vexing problem than that confronted in *Malley–Duff* by a R.I.C.O. action, as well as one not currently in dispute in this Circuit.

Moreover, the private right of action under section 10(b) was judicially implied, rather than expressly created by Congress. Significant elements of the cause of action under section 10(b) have been developed by the courts with an eye on the lack of a uniform federal statute of limitations provision. Specifically, the Supreme Court in *Ernst & Ernst v. Hochfelder, supra,* 425

U.S. at 187, 96 S.Ct. at 1378, 47 L.Ed.2d 668 (1975), held that negligence would not suffice to support a section 10(b) claim. In reaching this conclusion, the Supreme Court analyzed the other provisions and legislative history of the 1933 Act and the Exchange Act. *Id.* at 206–211, 96 S.Ct. at 1387–89. The Supreme Court found it significant that those sections which allowed recovery for negligent conduct had specific restrictions, including the relatively short express statute of limitations period applied by the Third Circuit in *Data Access,* which made them distinguishable from section 10(b). *Id.* at 208, 96 S.Ct. at 1388. The Court concluded that:

> these procedural limitations [on the express provisions in the securities law which allow recovery based on negligent conduct] indicate that the judicially created private damage remedy under § 10(b)—which has no comparable restriction [footnote]—cannot be extended, consistently with the intent of Congress, to actions premised on negligent wrongdoing.

*Id.* at 210, 96 S.Ct. at 1388. The footnote contained in the above passage stated:

> Since no statute of limitations is provided for civil actions under § 10(b), the law of limitations of the forum State is followed as in other cases of judicially implied remedies. See *Holmberg v. Armbrecht,* 327 U.S. 392, 395 [66 S.Ct. 582, 584, 90 L.Ed. 743] (1946), and cases cited therein. Although it is not always certain which state statute of limitations should be followed, such statutes of limitations usually are longer than the period provided under § 13. [one year from time the violation was or should have been discov-

---

**21.** In New York, the limitations period for common law fraud is "six years from the time the cause of action accrued or within two years from the time the wrongdoing was, or with reasonable diligence should have been, discovered." *Armstrong v. McAlpin, supra,* 699 F.2d at 87.

The New York borrowing statute, N.Y.Civ. Prac.Law and Rules § 202, provides that:

An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued,

except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

**22.** Justice Scalia warned that the general policies of uniformity and avoiding litigation used to support the result in *Malley–Duff* for R.I.C.O. actions could be used to support "selection of a federal limitations period for almost any federal statute, a conclusion plainly inconsistent with the results of our cases." *Agency Holding Corp. v. Malley–Duff Associates, Inc., supra,* 107 S.Ct. at 2773 (Scalia, J., concurring).

ered, in no event to exceed three years from time of offer or sale].

*Id.*

 In addition, in *Malley–Duff,* the Supreme Court explained that a virtue of a uniform federal limitations period was that it "avoids the possibility of the application of unduly short state statutes of limitation that would thwart the legislative purpose of creating an effective remedy." *Agency Holding Corp. v. Malley–Duff Associates, Inc., supra,* 107 S.Ct. at 2766. Adopting a uniform limitations period of one year after discovery and in no event more than three years after the violation occurs for section 10(b), given the imposition of the scienter requirement in part because of the lack of such a procedural restriction, might detract from the effectiveness of the remedy provided for by section 10(b). The Court declines to proceed down such a path.

The Supreme Court's decision regarding the statute of limitations for R.I.C.O. in *Malley–Duff* does not compel a departure from the longstanding practice in this Circuit concerning the applicable limitations period under section 10(b). In light of the differences between section 10(b) and R.I. C.O, the clear prior case law in this Circuit, and the judicial development of the elements of a section 10(b) action, this Court concludes that the state statute of limitations for common law fraud should continue to be applied to section 10(b) fraud claims.[23]

### CONCLUSION

The motions to dismiss the complaint are granted. Plaintiffs' claims against Hutton and the American Completion Defendants for violation of section 10(b) and Rule 10b–5, R.I.C.O. and common law fraud are dismissed for failure to plead fraud with particularity as required by Rule 9(b).[24] Plaintiffs are granted leave to replead these claims within thirty (30) days from the date of this decision in accordance with Rules 9(b) and 11, Fed.R.Civ.P. Plaintiffs' claims

under section 17(a) of the 1933 Act are dismissed because that section does not provide for a private right of action.

IT IS SO ORDERED.

---

**23.** The parties have not fully presented the statute of limitations argument under the analysis followed in this Circuit, and, therefore the Court will not address that issue at this time.

**24.** If plaintiffs wish to pursue their R.I.C.O. claims in repleading their complaint, they are to provide the information requested in the Court's R.I.C.O. Order, filed on February 1, 1989.