Rose McCOY, Plaintiff,

v.

Gary M. GOLDBERG and Gary
Goldberg & Company, Inc.,
Defendants.

No. 89 Civ. 8151 (WCC).

United States District Court,
S.D. New York.

Oct. 2, 1990.

As Amended Nov. 16, 1990.

Deutsch and Frey, New York City (Robert E. Frey, Herbert I. Deutsch, Ganine Gambale, Richard Rosenzweig, Law Student, of counsel), for plaintiff.

Parker Chapin Flattau & Klimpl, New York City (Charles P. Greenman, Stephen G. Rinehart, of counsel), for defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Defendants move this Court to (1) dismiss the complaint for failure to state a claim upon which relief may be granted, Fed.R.Civ.P. 12(b)(6); (2) dismiss several claims for failure to plead fraud with particularity, Fed.R.Civ.P. 9(b); and (3) dismiss the pendent state claims for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1).

### FACTS

Plaintiff Rose McCoy, a part-time nurse, brings this action against Gary M. Goldberg & Company, Inc. ("Goldberg & Co."), a securities brokerage and financial planning concern, and Gary M. Goldberg,

its President, alleging securities, RICO and various state law claims. The essence of each claim is that defendants "hatched and put into effect a plan and scheme to gain plaintiff's unquestioning trust and confidence, gain control over plaintiff's insurance proceeds and defraud plaintiff." Complaint ¶ 10.

The parties' relationship began in 1983, when, recently widowed, plaintiff received the proceeds of an insurance policy on her late husband's life. She contacted defendants, seeking financial planning and investment advice and services to preserve the principal and generate approximately $50,000 per year in income from her $750,-000 investment. Lacking any knowledge or experience with financial matters and hoping to provide for her two minor children, plaintiff told Goldberg that she was looking for a trustworthy financial advisor upon whom she could rely.

After several months of discussions and Goldberg's alleged promises to design a safe yet profitable five-year investment program suited to her needs, plaintiff placed approximately $750,000 into a non-discretionary account for which defendants would recommend investments.[1] For each limited partnership they recommended to plaintiff, defendants prepared their own written outline and sent it to plaintiff along with the offering memoranda and subscription agreements, suggesting that she did not have to "wade through" the companies' materials. Plaintiff asserts that the outlines were delivered through the use of interstate commerce. Plaintiff further claims that each of the outlines was materially false and misleading in that, among other omissions, it did not reflect the high-risk and low-return nature of the subject investment. Acting upon defendants' recommendations, plaintiff authorized the placement of $56,000 in limited partnerships, and other investments resulting in a portfolio of which 80% constituted securities more volatile in nature than plaintiff had indicated she intended to purchase. Plaintiff alleges that these investments,

suitable only for investors amenable to high risk and seeking tax savings, were urged solely to generate substantial commissions and other benefits for defendants. Complaint ¶ 21(b).

Plaintiff states that from 1983 to 1989, defendants repeatedly represented to plaintiff by mail and telephone and in meetings that her investment plan was working well, and that her insurance proceeds, earning 12%, were secure. Plaintiff claims that defendants knew at the time but did not inform plaintiff that: (i) her investments were locked in high-risk, non-liquid limited partnerships that had materially declined in value and continued to lose money; (ii) several of the partnerships had failed or were close to failing; (iii) plaintiff had been receiving distributions which she believed were income but which were, in part, return of capital; and (iv) in at least one case, plaintiff's money had been invested for an 18-year period.

Toward the end of five years, when plaintiff contacted defendants, defendants did not explain to her that the life insurance proceeds that were invested in limited partnerships had diminished in value to less than $200,000. Plaintiff then had her investment portfolio independently analyzed in December, 1988, and learned that her investments were extremely risky, she had lost more than 60% of her insurance proceeds, and there was no market in which to sell the investments without further losses. Plaintiff claims that as late as January 1989, defendants challenged that analysis and still continued to represent to plaintiff that her investments were performing as planned.

## DISCUSSION

### I. Failure to State a Claim

A motion to dismiss for failure to state a claim tests only the sufficiency of a complaint, *see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and should not be granted "unless it

---

**1.** Approximately $100,000 of the total amount invested was placed in stocks and bonds which are not the subject of this action. A total of $50,000 was returned to plaintiff before being invested.

appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Anderson v. Coughlin*, 700 F.2d 37, 40 (2d Cir.1983). A court must accept as true the allegations of the complaint and draw all reasonable inferences in favor of the plaintiff. *See Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686.

### a. The Securities Claims

■ Defendants first argue that the complaint fails to state a cognizable claim under Section 10(b) of the Securities Exchange Act and Rule 10b–5 promulgated thereunder. The necessary elements of a Section 10(b) claim are: (1) damage to the plaintiff, (2) caused by reliance on the defendant's misrepresentations or omissions of material facts, or a scheme by the defendant to defraud, (3) made with an intent to deceive, manipulate or defraud, (4) in connection with the purchase or sale of securities, and (5) furthered by the defendant's use of the mails or any facility of a national securities exchange. *See Packer v. Yampol*, 630 F.Supp. 1237, 1240 (S.D.N.Y.1986); *Lloyd v. Industrial Bio–Test Laboratories, Inc.*, 454 F.Supp. 807, 810 (S.D.N.Y. 1978). Defendants contend that the complaint is insufficient because it does not allege the elements of (a) misrepresentations of material fact, (b) intent to defraud "in connection with" the purchase of a security, (c) causation, or (d) reasonable reliance.

In order for misrepresentations to give rise to a Section 10(b) claim, they must be made "in connection with" the purchase or sale of a security. Misrepresentations which are unrelated to the securities themselves do not fall within the ambit of the federal securities laws.

> The purpose of § 10(b) and Rule 10b–5 is to protect persons who are deceived in securities transactions—to make sure that buyers of securities get what they think they are getting and that sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate or for a consider-

ation known to the buyer not to be what it purports to be. *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir.), (Friendly, J.) *cert. denied*, 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984).

The Second Circuit Court in *Chemical Bank* held that misrepresentations or omissions "involved in a securities transactions but not pertaining to the securities themselves" could not form the basis of a § 10(b) violation. *Id.* Following the teachings of *Chemical Bank*, the district court in *Siegel v. Tucker, Anthony & R.L. Day, Inc.*, 658 F.Supp. 550 (S.D.N.Y.1987), dismissed a Section 10(b) complaint because the alleged misrepresentations were not made "in connection with" the purchase of any particular security but were made in connection with inducing plaintiff to open a securities account with defendants. *See, Wilson v. First Houston Inv. Corp.*, 566 F.2d 1235 (5th Cir.1978).

■ In the instant case, the complaint alleges that Goldberg induced plaintiff to do business with Goldberg & Co. by stating that he would personally handle her account; that he would implement a safe and conservative investment program tailored to her needs which would provide complete safety of principal and a reasonable rate of return; that defendants' clients always enjoyed complete safety and a high return; and that defendants were highly experienced financial planners. Complaint ¶¶ 11, 16, 19. Defendants correctly maintain that such representations of conservative management and general investment advisory services manifestly did not pertain to the value or quality of any specific securities purchased by plaintiff but were related to defendants' attempt to gain plaintiff's business. As such, the Court finds these alleged misrepresentations, identical to those in *Siegel*, to be insufficient to state a Section 10(b) claim.

■ While defendants' self-praising business solicitation, taken alone, would not support plaintiff's securities claim, plaintiff's allegations of misrepresentations continue:

[T]he defendants for each and every limited partnership investment prepared and gave plaintiff a one or two page outline ("Outline") in lieu of her having to "wade through" the offering memoranda.

Each of these Outlines were materially false and misleading in at least the following respects and intentionally omitted any mention that some or all of the limited partnerships were: a) highly speculative; b) high risk; c) highly leveraged; d) illiquid and that there was no resale market for the investment; e) based on highly favorable assumptions of future viability of the investment in question when in many cases the property had no business history and was a start-up operation; ... and h) were subject to payments of undisclosed excessive commissions and other payments which would not be put to use in the business of the limited partnership, but instead paid to brokers that were able to find investors for that limited partnership. Complaint ¶¶ 35, 37.

Plaintiff's claims that each of the outlines was materially false and misleading in that, among other omissions, it did not reflect the high-risk and low-return nature of the investment, are sufficiently related to the purchase of the recommended security to be "in connection with" such for purposes of Section 10(b). *See Superintendent of Insurance of New York v. Bankers Life & Casualty Co.*, 404 U.S. 6, 12–13, 92 S.Ct. 165, 168–69, 30 L.Ed.2d 128 (1971).

Defendants counter plaintiff's claims with respect to the statements by asserting that their representations to plaintiff were not material in that the statements amounted to no more than mere puffery. While the statements that defendants would provide prudent financial management and personal attention and that plaintiff would double her money in five years without risk might be puffery under the authority of *Newman v. L.F. Rothschild, Unterberg, Towbin*, 651 F.Supp. 160, 163 (S.D.N.Y. 1986) and *Frota v. Prudential–Bache Sec., Inc.*, 639 F.Supp. 1186, 1190 (S.D.N.Y. 1986), defendants have disregarded plaintiff's further allegations concerning the "outlines" and their materiality. Defendants' summaries of each of the recommended securities, explaining the nature of the investments, coupled with the suggestion that plaintiff read the outlines in lieu of the offering memoranda clearly go beyond puffery into the area of fact. *See Cohen v. Prudential–Bache Sec., Inc.*, 713 F.Supp. 653, 659 (S.D.N.Y.1989). Plaintiff's allegation that each outline misrepresented its recommended security's risk, liquidity, leverage and prior experience, clearly states a claim of misrepresentation of material fact. *See Mauriber v. Shearson/American Express, Inc.*, 567 F.Supp. 1231, 1236–37 (S.D.N.Y.1983) (the defendant's continued assurances that the investments were consistent with the plaintiff's needs and objectives, when the defendant knew otherwise, was a violation of Rule 10b–5 and not mere puffery); *Clark v. John Lamula Investors, Inc.*, 583 F.2d 594 (2d Cir.1978) (recommendation of unsuitable securities violated 10(b) even where dealer made no untrue assertions about the securities); *Rush v. Oppenheimer & Co., Inc.*, 592 F.Supp. 1108, 1112 (S.D.N.Y.1984) (an assertion that a broker knew or reasonably believed that investments were unsuitable but that he recommended them to plaintiff nonetheless states a violation under 10b–5.)

■ Defendants next argue that plaintiff's allegation of scienter does not suffice to distinguish this case from a garden-variety breach of contract or breach of fiduciary duty claim and, as such, fails to constitute securities fraud. The Court disagrees. On a motion to dismiss, the Court must deem plaintiff's factual allegations as true. *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686. Accordingly, plaintiff's assertions that defendants intended to defraud plaintiff solely to generate for themselves substantial undisclosed commissions, gifts and loans from the sponsors of these limited partnership interests, including (a) a mortgage by the promoters of NC/KC Associates for the purchase by Goldberg of a mansion in Montebello Park; (b) fully paid vacations; and (c) a fully equipped recreational vehicle, Complaint ¶ 33, sufficiently provide a basis from which to infer scienter.

Defendants further claim that the complaint fails to allege causation, damages, and reliance. Plaintiff must allege both "transaction causation"—that the fraudulent assertions of defendants induced her to engage in the transactions at issue—and "loss causation"—that the misrepresentations and omissions caused her harm. *See Manufacturers Hanover Trust Co. v. Drysdale Sec. Corp.*, 801 F.2d 13, 20 (2d Cir.1986), *cert. denied*, 479 U.S. 1066, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987). Plaintiff alleges transaction causation in that she made each of her investments solely in reliance upon defendants' misrepresentations and, as a result, her investment portfolio contained approximately 80% speculative, illiquid, high-risk limited partnerships. Complaint ¶¶ 27–29, 39–41. Plaintiff also alleges loss causation in that as a result of her reliance on defendants' misrepresentations, the total market value of plaintiff's investments in November, 1989 was approximately 38.5% of her cost in 1983. Complaint ¶¶ 51, 52.

Defendants deny that plaintiff reasonably relied on their assertions and that they caused plaintiff's investments, citing authorities which have held that the requirement of reasonable reliance is not satisfied where an individual premises her claims upon oral representations that are contrary to the disclosures in a written prospectus. *See Platsis v. E.F. Hutton & Co.*, 642 F.Supp. 1277, 1299 (W.D.Mich. 1986), *aff'd*, 829 F.2d 13 (6th Cir.), *cert. denied*, 485 U.S. 962, 108 S.Ct. 1227, 99 L.Ed.2d 427 (1988) (in view of the plaintiff's sophistication, education, and admission that he read the materials, the court was not persuaded that reliance on the oral statements [made subsequent to the issuance of a written perspective] was justified). *Accord Kennedy v. Josephthal & Co*, 814 F.2d 798, 805 (1st Cir.1987) (offering memorandum's candid warnings made reliance unjustified as a matter of law); *Feinman v. Schulman Berlin & Davis*, 677 F.Supp. 168, 170–71 (S.D.N.Y.1988) (reliance on statements directly contradicted by the clear language of the offering memorandum cannot be basis for securities claim).

However, even assuming that the offering memoranda for each security, in accordance with disclosure requirements, would have apprised plaintiff of the risks of the investment and thereby have revealed defendants' misrepresentations, the court takes note of the fact that defendants specifically suggested that plaintiff not "wade through" the offering memoranda and subscription agreements which were "filled with technical jargon" but turn instead to the written analysis prepared by defendants for an easier understanding of the nature of the investment. Given plaintiff's naivete concerning financial matters and the fiduciary relationship that existed between plaintiff and defendants, plaintiff's reliance on the outlines was reasonable. Unlike the plaintiff in *Platsis*, the Court does not find plaintiff before the Court to be sophisticated in investment matters nor even to have read any written materials other than defendants' outlines. It is apparent that at the invitation of defendants themselves, plaintiff relied on what she believed to be defendants' accurate summaries of the more complicated materials. After luring plaintiff into ignorant reliance, defendants cannot now avail themselves of the doctrine of constructive knowledge. *See Mallis v. Bankers Trust Co.*, 615 F.2d 68, 79 (2d Cir.1980); *Cruse v. Equitable Sec. of New York, Inc.*, 678 F.Supp. 1023, 1028 (S.D.N.Y.1987) (even though disclosure in regular account statements may cure a prior unauthorized trade, the defendants' knowledge that the plaintiff could not decipher the statements and their offer to explain the statements to the plaintiff did not defeat the plaintiff's securities claim).

Plaintiff's reliance under the circumstances was reasonable. The Court therefore finds no basis under Rule 12(b)(6) to dismiss plaintiff's claims under Section 10(b) of the Securities Act for failure to state a claim upon which relief may be granted.

**b. The RICO Claims**

Count II of the complaint asserts a claim under the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Although essentially a criminal statute aimed at organized crime, RICO also provides for civil actions by private persons who are injured by reason of a RICO violation. 18 U.S.C. § 1964(c). The statute makes it unlawful for any person to (a) use money derived from a pattern of racketeering activity to invest in an enterprise, (b) acquire control of an enterprise through a pattern of racketeering activity, or (c) conduct or participate in the affairs of an enterprise through a pattern of racketeering activity. 18 U.S.C. §§ 1962(a)–(c). Thus, it must be alleged and proven that a person invested in, controlled, or conducted the affairs of an enterprise through a pattern of racketeering. "Mere commission of the predicate offenses" is not enough to state a claim. *See Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).

A "pattern of racketeering activity" is defined in § 1961 as "at least two acts" of prohibited conduct within a ten-year period; these "predicate acts," in turn, are defined as including specifically enumerated federal criminal offenses, such as securities fraud. 18 U.S.C. § 1961. While a pattern "requires at least two acts of racketeering activity," see 18 U.S.C. § 1961(5), still more is necessary to state a RICO claim. *Northwestern Bell,* (quoting *Sedima,* 473 U.S. at 496, n. 14, 105 S.Ct. at 3285 n. 14 (Powell, J., dissenting)). In its most recent construction of the pattern requirement, the Supreme Court ruled that a RICO complaint "must show that the racketeering predicates are related, *and* that they amount to or pose the threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.,* —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

 Defendants assert that the complaint fails to allege a "pattern" of racketeering activity and further claim that plaintiff fails to allege adequately the predicate violations of the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343.[2] Before reaching the issue whether a "pattern" of activity existed, it is incumbent upon the court to assess the adequacy of plaintiff's allegations of predicate violations of the mail and wire fraud statutes. In this regard, the Court notes that the complaint states that

> Goldberg and GarGo ... engaged in a pattern of racketeering activity by committing at least two acts of mail or wire fraud yearly ..., Complaint ¶ 58.

The instances of securities fraud alleged cannot be considered as predicate acts for purposes of the RICO claim because they were not pleaded as such in the complaint. While the court has acknowledged its obligation to accept as true the allegations of the complaint and to draw all reasonable inferences in favor of plaintiff, *see Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686, such deference must only be paid to factual allegations and not to legal conclusions advanced by plaintiff in the complaint. Moreover, plaintiff may not amend her pleadings through her memorandum of law in opposition to a motion to dismiss to include additional predicate acts. *See O'Brien v. National Property Analysts Partners,* 719 F.Supp. 222, 229 (S.D.N.Y.1989); *Jacobson v. Peat, Marwick, Mitchell & Co.,* 445 F.Supp. 518, 526 (S.D.N.Y.1977).

### Mail Fraud

 The only allegations of the complaint that suggest defendants made use of the mails are contained in ¶ 36 wherein it is alleged that "outlines were *delivered* to plaintiff through the use and means of interstate commerce" and ¶ 39 in which plaintiff asserts that "Goldberg *sent* plain-

---

**2.** The mail fraud statute provides in relevant part that:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises, ... for the purpose of executing such scheme or artifice (or attempting to do

so) [uses the mails or causes them to be used] shall not be fined more than $1,000 or imprisoned not more than five years, or both.

The applicable language of the wire fraud statute is nearly identical and the same analysis is applied to both statutes. *Carpenter v. United States,* 484 U.S. 19, 25 n. 6, 108 S.Ct. 316, 320 n. 6, 98 L.Ed.2d 275 (1987).

tiff a subscription agreement" for each investment. The Court finds such allegations to lack the detail necessary for the Court to determine that the United States mails were employed, as required by the statute. *See Utz v. Correa*, 631 F.Supp. 592, 596 (S.D.N.Y.1986) (delivery by messenger does not violate mail fraud statute). Because the complaint nowhere states that defendants used the mails, there is no predicate act of mail fraud. Similarly, the assertion of summary legal conclusions regarding the "use and means of interstate commerce" absent factual specifics, is insufficient to bring the alleged behavior of defendants within the scope of the mail fraud statute even if taken in a light most favorable to plaintiff as required by *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686.

### Wire Fraud

██ Plaintiff's wire fraud allegations are equally unsupported by a recitation of facts in the complaint. The only statement that defendants made use of the telephone is contained in ¶ 19 which states that "in *various telephone calls* Goldberg made ... additional representations to plaintiff...." However, there is no allegation that the jurisdictional prerequisite for invocation of the wire fraud statute has been satisfied. The federal wire fraud statute does not cover telephone communications between persons within the same state. *See, Harris Trust & Savings Bank v. Ellis*, 609 F.Supp. 1118, 1122 (N.D.Ill. 1985) (RICO claim dismissed where only alleged predicate acts of wire fraud were telephone calls between Illinois residents); *United States v. Freeman*, 524 F.2d 337, 339 (7th Cir.1975) (wire fraud requires "an interstate telephone call"), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327 (1976); *Wall Street Assoc., L.P. v. Becker*

*Paribas Inc.*, RICO Business Disputes Guide (CCH) ¶ 6,379, 1986 WL 10479 (S.D. N.Y.1986).

Where all parties are New York residents, all telephone calls are presumed to be intrastate and, absent any indication otherwise, the predicate act of wire fraud is not stated. *See Wall Street Assoc., L.P.*, RICO Business Disputes Guide (CCH) at 6,157; *Utz*, 631 F.Supp. at 596. Given that plaintiff and Goldberg are New York citizens and Goldberg & Co. is a New York corporation with its principal place of business located in New York, it is unreasonable to infer that interstate use of the wires occurred. Plaintiff's reliance on her belated assertion that she owned a vacation home in Florida, absent further specification, is insufficient to raise a reasonable inference that interstate telephone communications occurred. Accordingly, plaintiff has not pled a predicate act of wire fraud.[3]

### II. Failure to Plead Fraud with Particularity

#### a Securities Claim

Although the foregoing analysis indicates that plaintiff's allegation of securities fraud under Section 10(b) of the Securities Exchange Act survives defendants' Fed.R. Civ.P. 12(b)(6) motion to dismiss, this does not exhaust our examination. Following the well established rule that a securities fraud claim under Section 10(b) falls within the umbra of Fed.R.Civ.P. 9(b), *see Luce v. Edelstein*, 802 F.2d 49, 55 (2nd Cir.1986), defendants have also moved to dismiss under Rule 9(b), for a failure to plead fraud with the requisite particularity.[4] For the reasons which follow, defendants' Rule 9(b) motion is granted and plaintiff's claim of securities fraud is dismissed without prejudice to the filing of an amended complaint.[5]

---

**3.** Having determined that the RICO claim should be dismissed on the basis that plaintiff's complaint fails to allege the predicate acts, it is unnecessary to discuss whether the complaint properly alleges a "pattern of racketeering activity" or whether the civil RICO provision is unconstitutionally vague.

**4.** Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity ..." 5 Wright & Miller, Federal Practice and Procedure: Civil § 1296 (1969).

**5.** Defendants' claim of confusion due to the multiple defendants in this action is not taken seriously by the Court. Because plaintiff alleges that all representations were made by the individual defendant and that the corporation is his mere alter ego, it is clear that the misstatements

In the context of securities fraud cases brought under Section 10(b) of the Securities Exchange Act, Rule 9(b) serves a number of important functions. *See, Cruse v. Equitable Sec. of New York, Inc.,* 678 F.Supp. 1023 (S.D.N.Y.1987); *Di Vittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987). First, Rule 9(b) provides a defendant with a "fair notice of plaintiff's claim and the grounds upon which it rests," *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 (2d Cir.1979) thereby enabling the defendant to frame a response. Second, the rule protects defendants from the serious harm that may be visited upon their reputations from charges of fraud. *Id.* at 557. Finally, in a securities context, Rule 9(b) acts as a disincentive to the large number of plaintiffs with groundless claims who prosecute charges with the knowledge that there still might be some settlement value at the end of the line. Such suits are often given the demeaning sobriquet "strike suits." *See, Di Vittorio,* 822 F.2d at 1247.

■■■■■ When pleading fraud, although plaintiff does not have to recite detailed evidentiary matter,[6] summary allegations will not suffice. *Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 444 (2d Cir.1971). *See also, Walling v. Beverly Enterprises,* 476 F.2d 393, 397 (9th Cir. 1973). The requirement that a charge of fraud be pleaded with particularity is fulfilled when plaintiff states the time, place, and content of the statements and actions in question. *Id.,* at 397. *See also, Goldman v. Belden,* 754 F.2d 1059, 1069 (2d Cir.1985); *Troyer v. Karcagi,* 476 F.Supp. 1142, 1149 (S.D.N.Y.1979); *Todd v. Oppenheimer & Co.,* 78 F.R.D. 415, 420 (S.D.N.Y. 1978). While the Court recognizes that Rule 9(b) must be read in conjunction with Rule 8(a), which requires a plaintiff to plead only a short, plain statement of the grounds upon which she is entitled to relief, *Ross v. A.H. Robins Co.,* 607 F.2d at 557 n. 20, it remains clear that the requirements of Rule 9(b) can only be satisfied if the complaint sets forth (a) the precise substance of the statements made, and whether they were written or oral (or, in the case of omissions, what the omissions were); (b) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) it; (c) how the plaintiff was misled; and (d) what the defendant obtained as a consequence of the fraud. *O'Brien v. Property Analysts Partners,* 719 F.Supp. at 225 (quoting *Conan Properties, Inc. v. Mattel, Inc.,* 619 F.Supp. 1167, 1172 (S.D.N.Y.1985)).

■■■■ As noted above, plaintiff's securities claims must rest on misrepresentations or omissions made "in connection with" the purchase of particular securities and not the inducement of plaintiff to open a securities account with defendants, *Chemical Bank,* 726 F.2d at 943. For purposes of Rule 9(b), therefore, this Court must evaluate the particularity with which plaintiff alleges fraud in the specific investment offerings and disregard defendants' generalized promotional boasts "made with the intent to induce plaintiff to open an account with Goldberg and GarGo and deposit her insurance proceeds in their care." Complaint ¶ 20. While plaintiff recites with particularity the time, place and content of the alleged misrepresentations perpetrated by defendants in their inducement of plaintiff to open an investment account, the complaint leaves unclear the facts concerning the offering memoranda provided to plaintiff by defendants in the actual security transaction. Assertions made in the complaint such as: "Each of these Outlines were [sic] false and materially misleading in at least the following respects and intentionally omitted any mention that some or all of the limited partnerships were.[highly speculative] ...", Complaint ¶ 37, are too vague and conclusory to meet the minimum of particularity that Rule 9(b) demands. *Crystal v. Foy* [1981–1982 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,204 (S.D.N.Y.1981). Accordingly, this Court grants

---

and omissions entail the collective actions of Goldberg and the entity, Goldberg and Co. See *Quantum Overseas, N.V. v. Touche Ross & Co.,* 663 F.Supp. 658, 667–68 (S.D.N.Y.1987).

**6.** 2A J. Moore, Federal Practice ¶ 9.03 at 1930 (2d cd. 1972).

plaintiff leave to replead within thirty days from the date of this decision those claims relating to fraudulent securities practices under Section 10(b) of the Securities and Exchange Act.

### b. The RICO Claims

■ The Court draws similar conclusions with respect to plaintiff's RICO claims. It is well established that the requirements of Fed.R.Civ.P. 9(b) are applicable to plaintiff's RICO claims—particularly to the extent such claims are predicated upon securities fraud under section 10(b), mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343. *See Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 49–50 (2d Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); *see Zola v. Gordon,* 685 F.Supp. 354, 372 (S.D.N.Y.1988); *Plount v. American Home Assur. Co.,* 668 F.Supp. 204, 206 (S.D.N.Y.1987) (all of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions); *Rich–Taubman Associates v. Stamford Restaurant Operating Co.,* 587 F.Supp. 875, 878 (S.D.N.Y.1984) (Rule 9(b)'s requirements "apply with equal force to allegations of mail and wire fraud as predicate RICO civil offenses").

With respect to plaintiff's RICO claims, defendants argue that the complaint fails to meet the requirement of Rule 9(b) that fraud allegations specify the time, place, manner and content of the mailings and communications. *See Di Vittorio,* 822 F.2d at 1247. Defendants further assert that the complaint fails to cite the specific RICO provision under which plaintiff is suing, the specific statutes which were violated by the predicate acts, and the dates and factual circumstances of the predicate acts. The Court concludes that these contentions are meritorious.

Notwithstanding the Court's aforementioned recognition of the fact that plaintiff adequately pleads the scienter element of the alleged predicate acts of mail fraud, 18 U.S.C. § 1341 (1982), and wire fraud, 18 U.S.C. § 1343 (1982), *see Connecticut Nat'l Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2nd Cir.1987) (allegations of scienter are sufficient if supported by facts giving rise to a "strong inference" of fraudulent intent),[7] the complaint fails to meet the requirement of specificity demanded by Rule 9(b) concerning the commission of the predicate acts. The factual circumstances of the asserted predicate acts are inadequately pleaded. *See Radionic Industries, Inc. v. GTE Products Corp.,* 665 F.Supp. 622, 625 (N.D.Ill.1987) ("In the context of a mail fraud case, plaintiff must ... sketch out *who* (ie. which defendant caused *what* to be mailed *when,* and *how* that mailing further the fraudulent scheme) ... The same standards apply to wire fraud allegations.") The complaint does not allege the time, place, or substance of each purported act of mail or wire fraud.[8] The complaint does not attempt to set forth how the alleged predicate acts form a "pattern of racketeering," how they were continuing or likely to continue, or how they were related to each other. For the above reasons, the Court finds that plaintiff's RICO allegations amount to no more than skeletal or conclusory assertions.

Furthermore, plaintiff does not adequately ground her RICO claims in a particular section of the RICO statute, 18 U.S.C. § 1962, leaving the Court uninformed as to the precise claim being lodged. It is not clear from the face of the present complaint whether plaintiff is asserting that defendants violated the RICO act by (1) using money derived from a pattern of

---

**7.** The Court rejects defendants' assertion that the allegations lodged by the plaintiff are insufficient to hold that the "motive element of the *Beck scienter* analysis" is present in this case. The nature of the economic benefit that plaintiff alleges defendant would receive as compensation for his actions would not constitute "normal compensation" as defendants would have the Court believe in their reference to *Friedman*

*v. Arizona World Nurseries Ltd. Partnership,* 730 F.Supp. 521 (S.D.N.Y.1990).

**8.** For example, plaintiff claims in ¶ 56 that "Goldberg's and GarGo's conduct and acts and their continuing activities constituted a RICO enterprise" and in ¶ 59 that she was "injured by reason of the violation of RICO."

racketeering activity to finance an enterprise or (2) conducting or participating in the affairs of an enterprise through a pattern of racketeering activity. 18 U.S.C. §§ 1962(a), 1962(c).[9] This ambiguity in the pleadings runs counter to the ruling in *Reynolds v. East Dyer Development Co.,* 882 F.2d 1249, 1251 (7th Cir.1989) in which the court noted that it is essential to plead precisely the RICO section allegedly violated. The necessary details must be incorporated in an amended complaint because, as previously noted, the Court cannot treat statements in plaintiff's response to defendants' motion to dismiss as though they had been pleaded in the complaint.

### c. Common Law Fraud

Finally, plaintiff's common law fraud claims rests upon the same insufficient allegations relied upon by plaintiff to support her securities fraud claims. For the reasons set forth above, plaintiff's common law fraud claims are likewise dismissed with leave to replead within thirty days.

### III. Statute of Limitations

Filing an amended complaint to remedy the Rule 9(b) inadequacies would be fruitless if the claims suffer from other irremediable deficiencies. With that in mind, the Court turns to the statute of limitations question.

### a. The Securities Claims

Defendants argue that plaintiff's Section 10(b) claims are time-barred to the extent that plaintiff should have discovered her purported causes of action as early as 1983 when her initial purchases of securities were made. Before the Court reaches any conclusion as to the issue of constructive notice, it is critical to determine what statute of limitations it should apply in determining the timeliness of plaintiff's claims. Because Section 10(b) does not have an express statute of limitations, the Second Circuit has traditionally applied the limita-

tions period for common-law fraud embodied in N.Y.C.P.L.R. §§ 203(f), 213(8) (McKinney's 1972 and Supp.1988) to § 10(b) claims, *see e.g. Armstrong v. McAlpin,* 699 F.2d 79, 86–87 (2d Cir.1983), under which plaintiff must bring suit within six years of accrual of the cause of action or two years of discovery of the fraud, whichever is later. Defendants contend, however, that the Second Circuit should follow the Third Circuit in adopting a shorter limitations period. *See In re Data Access Systems Secur. Litigation,* 843 F.2d 1537 (3d Cir. 1988). The Third Circuit Court in *Data Access,* applying the analysis enunciated in *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) and *Del Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) to Section 10(b), concluded that the statute of limitations expressly set forth in analogous provisions of the Securities Exchange Act, rather than state limitations periods, should govern actions under that section. *Data Access,* 843 F.2d at 1545. The courts in *Agency Holding* and *Del Costello* created a limitations period for Section 10(b) of "one year after the plaintiff discovers the facts constituting the violation, and, in no event, more than three years after the violation." *Id.* at 1550; *accord Davis v. Birr, Wilson & Co.,* 839 F.2d 1369, 1370 (9th Cir.1988) (Aldisert, J., concurring); *Short v. Belleville Shoe Manufacturing Company, et al.,* 908 F.2d 1385 (7th Cir.1990); *Bernstein v. Crazy Eddie, Inc.,* 702 F.Supp. 962, 981 (E.D.N.Y.1988) ("it [is] highly likely that the Second Circuit will follow suit").

This Court, however, agrees with the extensive analysis set forth in *Eickhorst v. American Completion & Dev. Corp.,* 706 F.Supp. 1087, 1098–1102 (S.D.N.Y.1989), explicitly rejecting the Third Circuit's reasoning in *Data Access,* and chooses to apply New York State's borrowing statute of limitations as did the Court in *Klock v. Lehman Bros. Kuhn Loeb Inc.,*

---

9. For example, plaintiff's complaint reads in ¶ 58: "Goldberg and GarGo associated themselves with the enterprise, engaged in a pattern of racketeering activity by committing at least two acts of mail or wire fraud yearly, and conducted the affairs of the enterprise through the pattern of racketeering."

584 F.Supp. 210, 214 (S.D.N.Y.1984) to plaintiff's claims. The courts in *Klock* and *Eickhorst*, distinguishing themselves from the rulings of the courts in the Third Circuit regarding the applicable statute of limitations for Section 10(b) actions, noted that "[i]n actions alleging fraudulent violations of the federal securities law, the Second Circuit has consistently adopted state statutes of limitations for actions based upon common law fraud." *Eickhorst* 706 F.Supp. at 1100 (*citing Klock,* 584 F.Supp. at 214). *See also, IIT, International Invest. Trust v. Cornfeld,* 619 F.2d 909, 928 (2d Cir.1980) ("This circuit has uniformly found the analogy in the limitations period which the state had provided for an action based upon common law fraud."). To the extent that this practice has continued to be steadfastly applied by the district courts in this circuit, this Court so follows and shall apply the New York statute of limitations for common law fraud: six years from the date of commission of the alleged fraudulent acts, or two years from the date plaintiff discovered or could with reasonable diligence have discovered the fraud, whichever is later.

■■■■■ While state law fixes the length of the limitations period, federal law determines when the period begins to run. *Moviecolor Ltd. v. Eastman Kodak Com.,* 288 F.2d 80, 83 (2d Cir.), *cert. denied,* 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961). It is well established that the time from which the statute of limitations begins to run is not the time at which a plaintiff becomes aware of all of the various aspects of the alleged fraud, but rather the time at which plaintiff should have discovered the general fraudulent scheme. *Arneil v. Ramsey,* 550 F.2d 774, 780 (2nd Cir.1977). The statutory period "[does] not await appellant's leisurely discovery of the full details of the alleged scheme." *Id.* 780.

■■■ Defendants argue that plaintiff either discovered or should have discovered her purported causes of action as early as September 1983 when she made her initial purchase of securities.[10] Defendants further assert that, whatever the statute of limitations, plaintiff's admission that the partnership offering materials which she received would have disclosed the true nature and risk of the investments triggered the running of the statute of limitations on her claims. This Court disagrees. The doctrine of constructive notice must not be applied to plaintiff in light of the fact that defendants pointedly deterred plaintiff from examining the extensive offering documents. Plaintiff's ignorance was justifiable given her naivete in the subject matter and her reliance on defendants and their string of misrepresentations from 1983 through 1989. Having induced plaintiff to ignore the prospectuses, defendants can scarcely be heard to argue that plaintiff should be charged with knowledge of the information contained therein.

Contrary to defendants' assertions, the matter currently before the Court must be distinguished from *Hecox v. R.G. Dickinson & Co.,* Fed.Sec.L.Rep. (CCH) ¶ 93,237, 1987 WL 14502 (D.Kan.1987) in which a plaintiff's failure to read a given security prospectus did not prevent the statute of limitations from running on his claim. Plaintiff did not "abrogate [her] duty of reasonable diligence" by failing to familiarize herself with the prospectuses. *See Id.,* at 96,137. Her failure was the intended result of defendants' advice upon which she had a right to depend. While defendants are correct in asserting that an investor cannot rely on "reassuring comments" made by an investment advisor in lieu of examining the furnished prospectus, *Zola v. Gordon,* 685 F.Supp. 354, 366 (S.D.N.Y. 1988) (*citing Volk v. D.A. Davidson & Co.,* 816 F.2d 1406 (9th Cir.1987)), such is not the case here. Defendants' statements to plaintiff regarding the content of the prospectuses were intended to supplant, rather

**10.** To the extent this Court chooses to apply the New York statute of limitations, plaintiff's causes of action set forth in her complaint of December 8, 1989 with regard to securities purchases in October 1984, November 1984 and October 1986 would be timely regardless of this Court's determination of the issue of constructive notice. Accordingly, the Court need only discuss the plaintiff's claim made with reference to her securities purchase in September 1983.

than to supplement, the reading of the offering documents.

Plaintiff therefore cannot be charged with discovering the fraud until she learned that she had suffered a massive economic loss. Accordingly, this Court determines that plaintiff's claims for common law fraud are not time-barred.

### b. The RICO Claims

 To the extent this Court refuses to impute constructive knowledge of defendants' alleged fraudulent practices to plaintiff as of the date of purchase for the securities in question,[11] then all RICO claims filed by plaintiff are timely and fall within the well established four-year statute of limitations for such civil claims. *See, Agency Holding Corp. v. Malley–Duff & Assoc. Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987).

### c. Pendent State Law Claims

Defendants assert that plaintiff's claims based upon common law fraud, breach of fiduciary relationship, negligent misrepresentation, breach of contract and negligence are time-barred and therefore should be dismissed. For the reasons discussed above, the Court disagrees. The same principles which govern the accrual and running of the statute of limitations with respect to the federal securities law and RICO claims are applicable to the common law fraud claim. *Mienik v. Mienik*, 91 A.D.2d 604, 605, 456 N.Y.S.2d 424 (2d Dep't 1982) (cause of action accrues if plaintiff has knowledge of facts sufficient to suggest to a person of ordinary intelligence that he has been defrauded).

### IV. Pendent State Law Claims

Defendants first seek dismissal of plaintiff's pendent state law claims for lack of subject jurisdiction where the federal claims to which the state claims are attached are dismissed. As a matter of legal

principle, this contention is correct. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). However the Court determines defendants' argument to be premature at this juncture given the Court's ruling that plaintiff shall have a limited opportunity to amend her complaint. Similarly, the Court will not rule at this time with respect to defendants' assertion that the complaint fails to state a claim under state law with respect to fraud, breach of fiduciary relationship, breach of contract, negligence, and negligent misrepresentation.

### CONCLUSION

For the above stated reasons, plaintiff's complaint is dismissed pursuant to Rule 9(b), Fed.R.Civ.P. Plaintiff shall have leave to replead within thirty days from the date of this decision those claims which the Court has dismissed without prejudice.

SO ORDERED.

---

**11.** A civil RICO action is deemed to have accrued "at the time [plaintiff] discovered or should have discovered the injury" caused by a violation of 18 U.S.C. § 1962. *Bankers Trust Company v. Rhoades,* 859 F.2d 1096, 1102 (2d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989). The Court's analysis of when plaintiff discovered or should have discovered defendants' alleged fraudulent practices is explained above.